*Nov. Term,*
*1853.*

VERDEN
v.
COLEMAN.

---

VERDEN *v.* COLEMAN and Others.

By an Indian treaty made in 1832, the *United States* agreed to grant to one *T.*, an Indian, a section of land, which should be conveyed to him by patent. The land was to be selected under the direction of the Presi dent. The agent appointed by the President reported, on the 20th of *January*, 1836, that he had selected the section, a part of which was the land in question, and the President approved the report, but no patent ever issued to *T.* One *H.* had, in 1832, located on the land in question, made improvements and continued to occupy it, and, in 1841, obtained a patent for the same under a pre-emption right. *Held*, that the treaty did not operate as a grant *in præsenti*, but only as a contract for a future conveyance by patent. *Held*, also, that *H.'s* title was complete.

APPEAL from the *Benton* Circuit Court.

*Saturday,*
*December 3.*

PERKINS, J.—Bill in chancery to obtain an injunction restraining the sale of land under a power to sell contained in a mortgage. A temporary injunction was granted, which was dissolved on the coming in of the answer. Appeal to this Court.

Nov. Term,
1853.

VERDEN
v.
COLEMAN.

There is no dispute about the facts in the case, and they may be briefly stated as follows :

In *April*, 1850, the plaintiff, *Verden*, executed to *Isaac Coleman* a mortgage on certain lands lying in *Benton* county, *Indiana*, to secure the payment of a sum of money in one year from that date. The mortgage gave to *Coleman* the power to proceed by notice, &c., and sell the property mortgaged to make the money, if it should not be paid when due, without a resort to judicial proceedings. The money was not paid when due, nor at all, and *Coleman* proceeded, all regularly, to advertise, preparatory to a sale upon a day specified. Before that day arrived, this bill was filed, praying an injunction upon the sale, and, as a reason therefor, the plaintiff said that he purchased the lands mortgaged of *Coleman*; that the mortgage was given to secure the balance of unpaid purchase-money ; that to a part of the land sold to said plaintiff, and by him re-conveyed to *Coleman* by mortgage, *Coleman* had no title, and that said plaintiff had paid as much of the purchase-money on the whole tract as the part of it to which *Coleman* had title was worth. As evidence upon which he relies to show that *Coleman* had no title to a part of the land in question, the plaintiff sets forth that on the 27th of *October*, 1832, a treaty, subsequently ratified by the President and Senate, was made between *Jonathan Jennings, John W. Davis* and *Marks Crume*, commissioners on the part of the *United States*, and the chiefs and warriors of the *Potawatamie* Indians, which treaty, by article 3, declared that—"The *United States* agree to grant to each of the following persons the quantity of land annexed to their names, which land shall be conveyed to them by patent." Among others, "to *To-pen-ne-bee*, principal chief, one section." "The foregoing reservations shall be selected under the direction of the President of the *United States*, after the lands shall have been surveyed, the boundaries to correspond with the public surveys."

The plaintiff showed further, that under this treaty, the President appointed *J. T. Douglass* to select the lands

who, on the 20th of *January*, 1836, reported that he had selected for *To-pen-ne-bee* a certain section which covers a part of that embraced in the mortgage, and which report was approved by the President. No patent, however, ever issued conveying the section to *To-pen-ne-bee;* but, upon the 10th of *August*, 1843, a patent for it issued to *Hananiah Hewitt*, through whom *Coleman* claimed title, said patent reciting that *Hewitt* had "deposited in the general land-office of the *United States* a certificate of the register of the land-office at *Crawfordsville*, whereby it appeared that full payment had been made" by said *Hewitt* for the land, according to the act of congress, &c.

It appears that *Hewitt* claimed and obtained the title to the land under a pre-emption right; that he settled on it early in 1832, made improvements, continued to occupy, tendered the money for the land at the land-office, &c.; and that *Douglass* selected said tract in violation of the instructions under which he acted, as they directed him not to select land thus claimed; and that the war department at *Washington*, after the selection had been inadvertently approved by the President, upon learning the facts of the case, ordered the selection to be set aside.

In considering this case, we shall pass by the question of the right of the mortgagor to dispute the title to land he has mortgaged; and also the question as to the power of any department of the government, other than the judiciary, to set aside a grant of land, as, it is alleged, was attempted to be done in reference to the section selected for *To-pen-ne-bee;* and shall inquire what grant has been made in the case—who, according to the showing in the record, now has the legal title to the land in dispute.

A grant by patent, in the usual form, has been made by the proper authority to *Hewitt*. Of this there is no doubt. But it is insisted that a prior grant, of the same land, had been made to *To-pen-ne-bee*, whereby that to *Hewitt* was rendered unavailing. It is contended by the counsel for the plaintiff, that the clauses we have quoted above from the treaty of 1832, (for they are all that bear

upon the question) operated as a grant, and vested the legal title in fee simple to the land, in *To-pen-ne-bee*, the moment the selection was made and approved under it. If they did not so operate, then it was clear that the Indian had no interest in the land, and the title of *Hewitt* was complete, as the equity of the case was manifestly all with him, as well as the legal title, upon the issue of his patent.

In *Wilcox* v. *Jackson*, 13 Peters (U. S.) R. 498, it is said that "with the exception of a few cases, nothing but a patent passes a perfect and consummate title" to any part of the public lands. One class of cases to be excepted, is, where an act of congress grants land, as is sometimes done, in words of present grant. And, we may add, where the act or treaty provides for no other mode of conveyance, the courts incline, by construction, to make the terms of the one or the other, as the case may be, operate as grants, where the language taken altogether, in connection with what may be supposed to have been the intention, will admit of it. But in the case before us, it would be straining very much the doctrine of construction, to convert the language of the treaty into words of present grant; and it would be doing it in a case where no necessity existed for it, and where injustice would be promoted by it. Here, the treaty provided expressly the mode in which the legal title was to be conveyed, viz., " by patent;" which was superflous, if it was supposed it was already conveyed without a patent.

In *Longlois* v. *Coffin*, 1 Ind. R. 446, this Court had precisely the same question before it as is now under consideration, and the decision was, that "where a treaty says that the title to a certain tract of land is thereby vested in a certain individual, his heirs and assigns, the treaty operates as a grant of the land. But where it says, as in the present case, that a half section of land, at a specified point, shall be granted to a certain person, his heirs and assigns, by a patent from the President of the *United States*, the clause amounts *only* to a contract that the land shall be afterwards properly located by an agent of

the government, and be conveyed by a patent from the President."

*Per Curiam.*—The decree dissolving the temporary injunction is affirmed, with costs.

*H. S. Lane, S. C. Willson, D. Mace* and *W. C. Wilson,* for the appellant.

*Z. Baird* and *J. M. Reynolds,* for the appellees.