ASHLEY v. EBERTS *et al.*

DEED—RATIFICATION—ADVERSE POSSESSION.—Suit for the recovery of land. The land was granted to *A* by a treaty between the *United States* and the *Pottowattomie* tribe of Indians, made *October* the 16th, 1826. U. S. Stat. at Large, pp. 295, 299. The grant, Art. 6, was in these words: "The *United States* agree to grant to each of the persons named in the schedule hereunto annexed, the quantity of land therein stipulated to be granted: but the land so granted shall never be conveyed, by either of the said persons, or their heirs, without the consent of the President of the *United States*." *A*, on the 13th day of *June*, 1836, without the consent or approval of the President, executed and delivered to *B* a deed conveying to him the land in dispute; but the deed thus made was afterwards, on the 14th day of *December*, 1846, approved by *James K. Polk*, the then President of the *United States*. When the land was thus conveyed by *A* to *B*, there was no adverse possesion, but in 1843 *C* went into possession of the land, and at the time of the approval of the deed, by the President, held it adversely.

*Held*, that the deed from *A* to *B* could not, without the consent of the President, operate as a conveyance, but that his consent to its execution might be given before or after its execution.

*Held*, also, that the act of the President, in his approval of the deed, related back and gave it validity from the time of its execution, so as to protect *B* against the claim, by adverse possession, of *C*, which arose in the interim between the date of the deed and the date of its confirmation by the President.

APPEAL from the *Allen* Circuit Court.

DAVISON, J.—This was an action instituted in the Circuit Court for the recovery of land. *Robert Eberts*, who brought the suit, died before trial, and in his stead his heirs were made the plaintiffs; *Ashley* was the defendant. The issues were submitted to the Court upon the following agreement of facts:

"It is agreed that the land in controversy was granted to

*James Knaggs* by the treaty between the *United States* and the *Pottowattomie* tribe of Indians, made *October* the 16th, 1826. *Vide* U. S. Stat. at Large, vol. 7, pp. 295, 299. The grant, article 6, is in these words: 'The *United States* agree to grant to each of the persons named in the schedule hereunto annexed the quantity of land therein stipulated to be granted; but the land so granted shall never be conveyed by either of the said persons, or their heirs, without the consent of the President of the *United States*.' In the schedule the grantee is thus described and the land thus designated: 'To *James Knaggs*, son of the sister of *Okeos*, chief of the *River Huron Pottowattomies*, one-half section of land upon the *Miami*, where the boundary line between *Indiana* and *Ohio* crosses the same.' *Id.* p. 298. 'It is further agreed that *Knaggs*, on *June* the 13th, 1836, without the consent or approval of the President, executed and delivered to the said *Robert Eberts* a deed, conveying to him the land in dispute, being a part of said half section; but the deed thus made, was afterwards, on the 14th of *December*, 1846, approved by *James K. Polk*, the then President of the *United States*.' And further, it is agreed, that when the land was conveyed to *Eberts* there was no adverse possession; but that in 1843 the defendant, *Ashley*, went into possession of the land, and that at the time of the approval of the deed by the President held it adversely."

Upon these facts the Court found for the plaintiffs, and having refused a new trial, rendered judgment, &c.

It must be conceded that the deed from *Knaggs* to *Eberts*, could not, without the consent of the President, operate as a conveyance; but his consent to the execution of such deeds may be given before or after their execution. *Doe* v. *Beardsley*, 2 McLean 412. The deed then became operative on *December* 14, 1846, unless the then adverse possession rendered it invalid. And we have often decided that "the convey-

ance of real estate, if there be such possession at the time, is void as an act of maintenance." 4 Ind. 164; 1 Ind. 181; 8 Blackf. 366; 6 *id.* 99; 1 *id.* 127. But the appellee insists that the principle thus decided does not apply; that the act of the President, in his approval of the deed, related back and gave it validity from the time of its execution; while on the other hand it is contended that the deed, when it was given, was a nullity, and, consequently, the doctrine of relation can not be applied. Which of these positions is correct? The deed, it is true, did not, before the assent of the President, convey the legal title, nor did it raise such an equity as could be enforced in a court of chancery. Still it was, as we have seen, capable of confirmation, by the President's consent to its execution, and can not, therefore, be held absolutely void. If this position be correct we perceive no reason why the doctrine of relation should not apply. And it seems consistent with justice to the grantee that the deed should be held so far effective as to protect him against any claim, by adverse possession, that might arise in the interim, between its date and confirmation, otherwise a mere trespasser, by taking possession after a valid sale and before its consummation, would have power to defeat a *bona fide* purchaser. Had the adverse claim existed at the date of the sale and conveyance by *Knaggs* it might have constituted a bar to the action; but, in this instance, the claimant did not enter upon the land until the expiration of, at least, six years after the execution of the deed. The transaction, then, between *Knaggs* and *Eberts*, though in the form of a deed, may be considered a sale and purchase subject to the approval of the President, and his act of approval as relating back to the time when the deed was executed. *Jackson* v. *Raymond*, 1 Johns. Cases, 85; *Jackson* v. *Ball*, *id.* 81; *Jackson* v. *McCall*, 3 Cowan 80. In the case last cited it was held that a sheriff's deed, executed

five years after the sale, related back to the time of sale. See also *Bellows* v. *Maginnis*, 17 Ind. 64.

There are, however, decisions to the effect that "a deed would not relate back to the time of the contract to the injury of strangers." *Fite* v. *Doe*, 1 Blackf. 127; *Greewold* v. *Bard*, 4 Johns. 230. But these decisions were made in reference to cases in which the stranger had an interest in the land at the date of such contract. "Whenever it is intended to be shown that nothing passed by a grant, by reason that at the time there was a possession in another adverse to the grantor, the time to which the grant is to relate, is the time when the bargain or contract for the sale or purchase of the land was finally concluded between the grantor and grantee, and consequently any intermediate adverse possession before the execution of the conveyance, which is the technical consummation of evidence of the grant, can never affect it." See the opinion of the Court in *Jackson* v. *Raymond, supra.* This exposition, it seems to us, is correct, and if the act of the President can be regarded the consummation of the contract of sale, and we think it can, the defence set up by the defendant is not maintainable. Indeed this branch of the case presents but one inquiry, namely: Did the ratification of the deed render it valid from the date of its execution? This question is answered affirmatively in *Doe* v. *Beardsley, supra,* and that decision is, in our judgment, a proper construction of the act of Congress to which we have referred. *Anderson* v. *Lewis*, Freeman's Miss. R., p. 178. We are advised that the reasoning of the Court, in *Murry* v. *Wooden*, 17 Wend. 538, is to some extent in conflict with the view we have taken; but the facts of the case are essentially different from the one before us, and we are not inclined to follow it.

*Per Curiam.*—The judgment below is affirmed, with costs.

*Case & Morris*, for the appellant.

*W. H. Coombs*, for the appellees.