## SUMNER *v.* COLEMAN.

PRIOR EQUITIES.—In 1832, *A* settled on a tract of land as a pre-emptioner, and made improvements as required by the pre-emption law. He and those claiming under him have ever since been in possession. In *October,* 1832, after *A* had settled on the land and made improvements, the *United States*

made a treaty with the *Pottawatomic Indians*, in which she agreed to select and convey some one, but no particular section to the chief of the tribe, after it had been surveyed. In 1835, the administration determined that the *Indian* reservations must be located on lands not claimed by pre-emptioners. In 1836, the location was made for the chief, embracing the land claimed by *A*, and on which he resided. In 1839, the administration set aside the location so far as it embraced the tract in question, and in 1843 issued a patent to *A* upon his making proof of his claim.

*Held*, that *A* has a prior equity, and a right to the legal title.

APPEAL from the *Benton* Circuit Court.

PERKINS, J.—The facts of this case may be learned mostly from the cases of *Verden* v. *Coleman*, 4 Ind. 457; S. C. 10 Ind. 552; and *Sumner* v. *Coleman*, 20 Ind. 486. But the point now presented has not before been decided by this court. That question is, who acquired the title from the *United States* to the south-west fractional quarter of section 31, in township 26, north of range 9 west, in *Indiana?* Was it *Hannaniah Hewitt*, or the *Indian* chief, *Topenehe?*

In 1832, the legal title was in the *United States*. In the early part of that year, *Hewitt* settled on the land as a pre-emptioner, made improvements as required by the pre-emption law; and he was a person falling within the class entitled to acquire pre-emption rights. He, and those claiming under him, have ever since been in possession of the land. He made proof of his claim as a pre-emptioner; it was recognized by the administration at *Washington;* and a patent was issued to him by the *United States*, in *August*, 1853.

In *October*, 1832, after *Hewitt* had settled and made an improvement on the fractional quarter section in question, the *United States* made a treaty with the *Pottawatomie Indians*, in which she agreed to select and convey, after the lands should be surveyed, to the chief of the tribe, *Topenehe*, some one, but no particular, section of land.

In 1835, it appears by documents in the record, the administration at *Washington* determined that *Indian* re-

servations must be located on lands not settled on by those seeking to appropriate them under pre-emption claims, and that locating agents should be so instructed.

In 1836 or 1837, one *Douglass* made the location for *Topenehe* under the treaty above named, embracing the southwest fractional quarter of section 31 now in question, of which *Hewitt* was in possession as a pre-emption claimant. It would seem from *Stoddard* v. *Chambers*, 2 How. U. S. Rep. 284, that if a patent had issued to *Topenehe*, the court might have set it aside. See, also, 1 Ind. Rep. 339.

In 1839, the administration at *Washington* set aside the location made by *Douglass*, so far as it embraced the above-named fractional quarter settled on by *Hewitt*, both because *Douglass* had located it in violation of instructions, and because it invaded a recognized right of title in *Hewitt*; and in 1843, as has been said, a patent was issued to *Hewitt* for the land. In deciding upon conflicting titles derived directly from the state or the *United States*, the rules of law applied between individuals as to fraud, mistake, prior equities, etc., are, as a general rule, applicable; and it seems to us that *Hewitt* has in this the prior equity, is entitled to the legal title, and that it is the duty of the court to declare the location made by *Douglass*, so far as it covered the land in question in this suit, void as to *Hewitt*.

The case is simply this: The *United States* owns a large tract of land; she agrees that *Topenehe* shall be a tenant in common with her as to one section of that land without right of possession till after partition, and with no power or voice in the matter of partition, but with only the right to be a passive recipient of such section as the administration shall set off. In the mean time, the *United States* says to her citizens of a specified class, go and select tracts of a given size out of this large tract above mentioned, spend money on them, locate your families on them, etc., and of those particular tracts you shall have the right to the conveyance of the title. *Hewitt* moves his family, and invests money upon a selected piece of land, under this

law.  Afterward, by accident, mistake, or design, this tract of *Hewitt's* is selected for *Topenehe.* The selection is in pursuance of no equity attaching to that particular piece in favor of *Topenehe.* It is in violation and abrogation of an equitable title in *Hewitt.* It is an attempt to divest a vested right and title to property held adversely, at the time of the selection for *Topenehe.* It was a void selection, or at least a voidable one, and it was avoided by the authorities at *Washington.*

A treaty granting or reserving a given tract of land might operate to transfer at once the legal title to such tract. And, where a treaty granted or provided for reserving some tract to be determined by a location, we do not deny that a legal location, made pursuant to the treaty, might relate back to the date of the treaty, and, with the treaty, complete the title. For examples of such relation, in cases other than by treaty, see *Doe* v. *Horn,* 1 Ind. 364; *Bellows* v. *McGinnis,* 17 Ind. 64; 22 Ind. 55, 463; 12 Ind. 434; 10 Ind. 417. For cases where intervening circumstances affected the question of relation, see 7 Blackf. 437; 1 Blackf. 127; 1 Ind. 462, 468; 20 Ind. 432. See also *Landes* v. *Brandt,* 10 How. U. S. Rep. 348.

In the case at bar, though *Hewitt* might have been a trespasser when he entered, it having been just before the treaty extinguishing the *Indian* title, still his occupancy afterward was recognized by the administration as having been legal as a pre-emptioner, and as giving him the equitable rights of such a person, which equitable rights were older than the title of *Topenehe,* whose title could not vest in the land in question till a legal location; and such a location could not, as we think, be made as against *Hewitt's* prior equity. See the following authorities, which, we think, sustain the view we have taken, 14 How. U. S. Rep. 377; 9 *Id.* 314; 24 *Id.* 394; *Id.* 357; 15 Pet. 401; Brightly Dig. 462, *et seq.*; 3 Cal. Rep. 370.

*Douglass'* location, on *Hewitt's* equitable title, may be regarded as void. Public policy forbids that all the lands

acquired by a treaty should be closed to pre-emption rights till an *Indian* reservation is selected.

With us this is the point. In 1836, 1837, when *Douglass* made his selection for *Topenehe, Hewitt* was a pre-emptioner on a part of the land selected, so recognized by the executive department of the government, and that being so, his equity in that land is earlier and superior to that of *Topenehe;* one that the location by *Douglass* could not divest. If we are wrong in this, we are wrong in our decision. The treaty was not a step with reference to the title to the particular land now in question.

*Per Curiam.*—Judgment affirmed, with costs.

*Dan. Mace* and *McDonald & Roache,* for appellant.

*Barbour & Howland,* for appellee.

NOTE.—A petition for rehearing was filed in this case on the 4th day of *January,* 1865, and overruled.