STEEPLE ET UX. *v.* DOWNING ET AL.

PLEADING.—*Use of Pronoun.*—Where a personal pronoun, designating a party to an action, immediately follows the names of both parties, in a pleading, its antecedent is determined by the meaning intended.

SAME.—*Action to Recover Real Estate.—Defences.—Evidence.*—All matters of defence are admissible in evidence under the general denial, in actions to recover real estate.

SAME.—*Conveyance of Land held Adversely to Grantor.*—A conveyance of land to another, while it is in the adverse possession of a third person, under claim of ownership, though made by the rightful owner, is absolutely void, as against such adverse holder or his privies.

SAME.—*Real Party in Interest.*—In such case, as against the adverse holder,

the grantor is the real party in interest, and, by such conveyance, authorizes the grantee to sue in the name of the grantor, for the recovery of the real estate so conveyed, for the benefit of the grantee. But the grantee can not maintain such action in his own name.

SAME.—*Answer.—Reply.*—Where, in an action to recover real estate, the defendant answers, alleging, that, prior to the commencement of the action, the plaintiff had conveyed the land in controversy to another, it is a sufficient reply to allege, that, at the time of such conveyance, the defendant was in adverse possession of the land, under claim of ownership.

SAME.—*Dismissal of Action by Grantor.—Power of Attorney.*—Where, in such an action, tried on issues so made, there is evidence tending to establish the execution of such alleged conveyance, the grantor can not authorize the defendant, even by a power of attorney, to dismiss the action.

SAME.—*Evidence.—Patent for United States Lands.—Proof of Execution.*—By section 450, Rev. Stat. U. S., the secretary of the President is authorized to sign the name of the latter to patents for United States lands; and a patent purporting to have been so signed in 1857 is admissible in evidence without proof of its execution.

SAME.—*Acknowledgment of Deed before Foreign Justice of the Peace.*—By the legalizing act of March 4th, 1875, Acts 1875, Reg. Sess., p. 61, a deed theretofore acknowledged before a justice of the peace of a Territory or State within the United States, whose official character has not been properly certified to, is admissible in evidence without proof of its execution.

SAME.—*Indian Treaties.—Title of Lands Ceded.*—The Indians to whom lands were ceded by the United States by the treaty of August 29th, 1821, 7 U. S. Stat. at Large, page 218, took title by virtue of the terms of the treaty, though such lands were therein described as unlocated sections.

SAME.—*Conveyance by Indians.—Ratification by President, after Death of Grantee.* —A conveyance, by a beneficiary of such treaty, of a specified tract of land afterward conveyed to him by the United States by patent, pursuant to such treaty, vested the title in the grantee, though the latter died prior to the issuing of such patent, and prior to the approval of such conveyance, by the President; such approval relating back to the execution of the conveyance.

SAME.—*Rule of Property.*—The doctrine of the case of *Ashley* v. *Eberts,* 22 Ind. 55, has become a rule of property in this State.

SAME.—*Location of Lands Ceded.—Presumption.*—A recital in such conveyance, that the lands ceded by such treaty had been located under the direction of the President, raises the presumption that such location had been made prior to the execution of such conveyance.

SAME.—*Delivery of Conveyance.*—The production of a conveyance so approved, by the heirs of the grantee, is presumptive evidence that it had been properly delivered to the grantee, and no new delivery was necessary.

SAME.—*Possession by Plaintiff's Grantor.*—Where, in such case, the plaintiff traces his title, through his grantors, to the United States, it is not necessary to establish possession of the land in his grantors.

Steeple *et ux. v.* Downing *et al.*

SAME.—*Fraud.*—Where, in an action to recover real estate from one holding adversely, under claim of ownership, the defendant does not claim title through any of the grantors under whom the plaintiff claims, he can not attack any conveyance forming a link in the plaintiff's chain of title, as fraudulently procured.

SAME.—*Harmless Evidence.*—*Map.*—An engineer's map of the township in which the land in controversy is situated, made by him from the original field notes, is harmless evidence against the defendant in such action.

SAME.—*Tax Title.*—*Right of Recovery in Third Person.*—If, in such action, a tax deed, introduced in evidence by the defendant, shows on its face, without other evidence, an outstanding title in a third person, the plaintiff can not recover, though the defendant himself have no title thereunder.

SAME.—*Statute Construed.*—*Act of* 1852.—Section 166 of the act of June 21st, 1852, in relation to the assessment of taxes, 1 G. & H., p. 68, providing that a tax deed should " vest in the grantee an absolute estate in fee-simple," had reference merely to the quantity of estate to be conveyed, and did not mean that such estate should vest in the grantee notwithstanding the fact that the law had not been complied with in making the sale.

SAME.—*Validity of Tax Sale.*—A tax deed, based upon a sale made while such law was in force, without evidence that steps, of which such deed makes no mention, necessary to constitute a valid sale had been taken, is incompetent evidence of title.

SAME.—*Adverse Possession.*—*Instruction.*—Where, in an action to recover real estate, the defendant introduces no evidence of title, except his adverse possession, and a tax deed to a third person, unaccompanied by evidence that the steps unrecited in the deed, necessary to constitute a valid sale, had been taken, it is not error to instruct the jury that he claims by virtue of no paper title, but merely by adverse possession.

SAME.—*Continuity of Adverse Possession.*—*Interruption.*—*Statute of Limitations.*— To constitute a valid title by reason of twenty years' adverse possession, such possession must have been continuous. And where adverse possession has been interrupted at any time, and then resumed, the possession is deemed to have been constructively in the rightful owner during such interruption, and the adverse holder's claim commences to run from the time he thus resumed.

SAME.—*Declarations of One in Possession.*—The declarations of a party in possession of land, showing the character of his possession and the title by which he held, are competent evidence against a party claiming under him.

SAME.—*Recovery by Part Only of Plaintiffs.*—*Supreme Court.*—Where, in an action by several plaintiffs, to recover real estate, the evidence and findings are, that the title and right to recover are in part only of the plaintiffs, judgment should be rendered accordingly; but, if judgment be then rendered for all, the Supreme Court, on appeal by the defendant, will reverse the judgment only as to those not entitled to recover, and affirm it as to those who are.

SAME.—*Application for New Trial as of Right.—Notice.*—The successful party in an action for the recovery of real estate is not entitled to notice of an application by the losing party for a new trial of the cause, as of right, under section 601 of the code.

SAME.—*Order Granting New Trial Vacates Judgment.*—An order in such case, for a new trial, operates as a vacation of the judgment previously rendered, without a formal order setting it aside.

SAME.—*Harmless Nunc Pro Tunc Entry.*—A *nunc pro tunc* entry, vacating the judgment, entered at a term subsequent to the one at which a new trial is granted, is ineffectual and harmless.

SAME.—*Instruction.—Harmless Refusal.*—Where the substance of an instruction refused is covered by one given, such refusal is harmless.

From the Elkhart Circuit Court.

*R. M. Johnson, J. D. Osborn* and *E. G. Herr,* for appellants.

*J. H. Baker, J. A. S. Mitchell* and *J. A. Quackenbush,* for appellees.

WORDEN, J.—This was an action by the appellees, against the appellants, to recover possession of a certain tract of land.

Issue; trial; verdict and judgment for the defendants.

New trial granted the plaintiffs, under the statute, on payment of costs; the second trial resulting in a verdict and judgment for the plaintiffs.

The defendants below appeal, and we proceed to consider the questions involved.

We may premise, by saying that the case has been ably and exhaustively argued by the counsel of the respective parties, from whose briefs we have received valuable aid in the consideration of the case.

The complaint, the sufficiency of which is called in question, was as follows, viz.:

" The plaintiffs, Lewis Downing, Helms Downing, Sample R. Downing, Theodore Downing, Susannah Laffey, Bernard Laffey, her husband, Zelia Chase and Sidney E. Chase, her husband, Lucy Jane Weeks and Nelson Downing, complain of the defendants, George

Steeple and Rose Steeple, and say they are the owners, and lawfully entitled to the immediate possession, of the following described real estate, situate in Elkhart county, in the State of Indiana, to wit: All that part of the south-east quarter of section six (6), township thirty-seven (37) north, of range five (5), lying and being south of the Saint Joseph river; which real estate, above described, the defendants have possession of without right, and unlawfully detain from the plaintiffs. Wherefore plaintiffs pray judgment for the possession of said real estate, and one thousand dollars for the detention thereof."

We may here consider the objection urged to the complaint, and thereby save the necessity of again recurring to it. It is said of the complaint, in the brief of counsel for the appellants: "It don't allege, that the appellees are the owners of the real estate described. It don't allege, that they are entitled to the possession of it. But it does allege, and that too affirmatively and distinctly and positively, that the appellants, George and Rose Steeple, are the owners, and lawfully entitled to the possession, of the land described."

The complaint says, that the plaintiffs, naming them, "complain of the defendants, George Steeple and Rose Steeple, and say *they* are the owners," etc. If the pronoun "they," as above used, relates to Rose Steeple and George Steeple for its antecedent, the appellants are unquestionably right. But, if it relates to the plaintiffs, the appellants are as clearly wrong.

There is no rule of legal or grammatical construction, which necessarily requires that a pronoun shall relate to the last noun, or nouns, mentioned for its antecedent. This is a matter which is governed by the sense and meaning intended to be conveyed. We are of opinion, that the word "they," as above used, related to the plaintiffs who had previously been named, and that the complaint was good.

The defendants answered in five paragraphs. The

first was the general denial. To the third, a demurrer for want of sufficient facts was sustained. We have not considered whether the third was sufficient in law, because all defences could have been given in evidence under the general denial, and hence no harm could have been done in sustaining the demurrer.

The fourth paragraph of answer was as follows:

" And, for a fourth and further answer to the plaintiffs' complaint herein, the said defendants say, that the said plaintiffs are not the real parties in interest; that, prior to the commencement of this suit, the said plaintiffs sold and conveyed the real estate described in the complaint to one John Weston, and therefore, at the time of instituting the suit, had no interest in the subject-matter thereof."

To this paragraph of answer the plaintiffs replied, first, by denial, and, second, as follows:

"And, for second and further reply to the fourth paragraph of the defendants' answer, the said plaintiffs admit that they did, prior to the commencement of this suit, by deeds of conveyance, bargain, sell and convey to the said John Weston the real estate in the plaintiffs' complaint mentioned; but said plaintiffs say, that they are not, nor ought they to be, precluded thereby to prosecute their aforesaid action in this behalf, because, they say, that, at and prior to the date of the execution of said deeds of conveyance by them, the said plaintiffs, to said John Weston, alleged in said answer, the said defendants, George Steeple and Rose Steeple, were in the actual occupancy and enjoyment of said real estate mentioned in the complaint, under a pretended deed of conveyance thereof to them, or one of them, and holding and enjoying the same under a pretended claim of right and title, and adversely to the plaintiffs and to the world; whereby, as to them, the said defendants, the said deeds of conveyance from the said plaintiffs to the said John Weston are champertous and void; and they, the said plaintiffs, have

good right and lawful authority to prosecute this suit for the use and benefit of their said grantee. Wherefore," etc.

A demurrer to this paragraph of reply, for want of facts, was filed by the defendants, and overruled. This, it is claimed, was error.

A conveyance of land, though by the rightful owner, while it is in the adverse possession of another claiming to be the owner thereof, is absolutely void as to the party in possession and his privies. *The German Mut. Ins. Co. of Indianapolis* v. *Grim*, 32 Ind. 249, and cases there cited.

Such deed, therefore, does not vest the grantee with the title to the land, as against the party in possession; nor can the grantee maintain an action in his own name, to recover the land, against the party thus in possession when the deed was executed.

But such deed is good as between the parties thereto, and it authorizes the grantee to bring an action in the name of the grantor, against the party in possession, to recover the land; and the recovery will enure to the benefit of the grantee.

We make the following quotation from the opinion delivered by BRONSON, J., in the case of *Livingston* v. *Proseus*, 2 Hill, 526, as being applicable to the case here:

"It is extremely well settled, that a conveyance of lands which are at the time held adversely to the grantor, is inoperative and void. It would seem to follow from this doctrine that the title remains in the grantor, and that he may assert it in the same manner as though the deed had not been made. But it is equally well settled, that as between the grantor and grantee, and persons standing in legal privity with them, the deed is operative and passes the title. (*Jackson* v. *Demont*, 9 Johns. 55; *Livingston* v. *Peru Iron Co.*, 9 Wend. 516, per SAVAGE, C. J.; *Van Hoesen* v. *Benham*, 15 Wend. 164.) From these two propositions, to wit, that the owner has parted

with his title, and that the grantee can not assert it on account of the adverse holding which avoids the deed, it has been supposed to result as a necessary consequence that the title was extinguished or lost. But it has been denied that any such consequence follows. *(Jackson* v. *Brinckerhoff,* 3 Johns. Cas. 101; *Jackson* v. *Vredenburgh,* 1 Johns. 159; *Williams* v. *Jackson,* 5 Johns. 489; *Jackson* v. *Leggett,* 7 Wend. 377.) Indeed, it may be laid down as a maxim in the law, that a title which once existed must continue to reside somewhere: it can not be annihilated.

" The whole apparent difficulty arises from an inaccurate statement of the consequence which results from the adverse holding at the time the deed is executed. It is often said in the books, without any qualification, that the deed is void. But that is only true in relation to the person holding adversely, and those who afterwards come in under him. As to all the rest of the world the deed is valid, and passes the title from the grantor to the grantee. This I think is sufficiently established by the cases already mentioned and the authorities on which they rest. The deed is void as against the party who might otherwise be injured; but it is good as to all others. If the person who held adversely voluntarily abandon the possession, there can be no doubt that the grantee may enter and enjoy the land. Or, if after such abandonment a stranger enter, the grantee may bring ejectment and oust him. The stranger was in no peril of being injured by the conveyance. His entry was tortious, and he shall not cover himself with a shield which belongs to another, between whom and himself there is no legal privity.

" But as against a person holding adversely, the deed is utterly void—a mere nullity. There was an attempt to convey, but the parties failed to accomplish the object. The title still remains in the original proprietor, and he may—indeed, must—sue to recover the land. It is true that the recovery will inure to the benefit of the grantee

in the deed; but that is a matter between him and the grantor, and with which the person holding adversely has nothing to do. It is enough for him that the deed does him no injury.

" When it has been apprehended that a deed might be attacked on the ground of an adverse holding at the time it was made, it has been usual to insert counts in the declaration on the title of the grantor and the grantee, so that if the suit failed as to the one, it might succeed as to the other. (*Jackson* v. *Leggett*, 7 Wend. 377.) But the title is not in both of them, and it is but a poor compliment to the law as a science that it can not decide which ought to sue. It has, I think, settled the question. When the action is brought against the person holding adversely, or any one who has succeeded to his right, the grantor must sue. But as against a stranger—one who does not stand in legal privity with him who held adversely when the deed was made—the grantee must sue. In cases where the grantor may sue, he must of necessity be allowed to show the deed void when the defendant attempts to set it up to defeat a recovery. Otherwise, the defendant would first defeat the grantor by showing he had conveyed, and then defeat the grantee by showing the deed void; and thus we might come, in effect, to the result of extinguishing a good title."

The above doctrine was applied in the case of *Hamilton* v. *Wright*, 37 N. Y. 502, where it was held, that the grantee in such deed might bring an action in the name of his grantor, to recover possession of the land from the person in the adverse possession when the deed was made.

In the case of *Farnum* v. *Peterson*, 111 Mass. 148, 151, it was said, that, " When it was said that the deed of one, who is disseised, is void, it is intended only that it is inoperative to convey legal title and seisin, or a right of entry, upon which the grantee may maintain an action in his own name against one who has actual seisin. It is not void as a contract between the parties to it.

The grantee may avail himself of it against the grantor by way of estoppel; or by suit upon the covenants; or may recover the land by an action in the name of the grantor." Again, in *McMahan* v. *Bowe*, 114 Mass. 140, 145, it was said: "The authorities in this State, cited by the tenant, show the rule to be established that a deed of a disseisee conveys no title which can be enforced in the name of the grantee, against the disseisor or his privies, but they go no further. It is now held, that such deed is good against the grantor, and that it entitles the grantee to an action to recover the land, in the name of the grantor but to his own use, even against the disseisor." See, also, Tyler on Ejectment, p. 939, *et seq.*

We are satisfied, both upon reason and authority, that where one conveys land to another, which at the time is in the adverse possession of a third person, whereby the title can not pass as against the party thus in possession, the grantor impliedly authorizes the grantee to use his, the grantor's, name, in an action to recover the land from the party thus in the possession thereof.

It must be assumed that the grantor intends, by such deed, not only to vest the title in the grantee as between the latter and himself, but as against the party thus in possession, and to give the grantee the beneficial enjoyment of the property. The grantee, however, can not have the enjoyment of the property, unless he may use the name of his grantor as plaintiff, in an action to recover it.

If he can not thus use the name of his grantor, his deed conveys no right that he can enforce, and it is a mockery to say that the title passes to him as between his grantor and himself. As the use of the grantor's name in such action as plaintiff is necessary in order to give the grantee the possession, and therefore the enjoyment, of the property, in accordance with what must have been the intention of the parties to the deed, it seems clear that the grantor, by making such deed, impliedly

authorizes the use of his name as plaintiff, in an action to recover the property.

The case is not without its analogies in the law. Thus, before the code, where a chose in action was assigned, the legal title not vesting in the assignee, the latter might have sued upon it in the name of the assignor, and the courts would have protected the assignee in his equitable rights, against the wrongful acts or interference of the assignor. 1 Chitty Plead., 16th Am. ed., p. 17, n. *k.*; Chitty Bills, 12th Am. ed., p. 10, n. 2.

But it is claimed by the appellants, that the code precludes the right of bringing such action in the name of the grantor, by providing that "Every action must be prosecuted in the name of the real party in interest," etc. 2 R. S. 1876, p. 33, sec. 3. If such must be the construction of the code, then it results, that, where the owner of land has conveyed it while it was in the adverse possession of another, no one could ever maintain an action against the party in possession, to recover it. The grantee of such deed could not, as has been seen, because his deed, as against the party in possession, is void.

If an action can not be maintained in such case in the name of the grantor, it can not be maintained at all; and the party in possession, and those claiming under him, can retain the property for all time, however groundless his claim may have been. We are not inclined to give the code a construction that will lead to such results. We think the grantor of such deed is the real party in interest in such action, as against the party in possession of the land. The title to the land, as against the party in possession, still remains in the grantor of such deed. So far as the defendant in such action is concerned, the case stands as if no conveyance had been made by the owner at all, for the conveyance, as to the defendant, is a nullity.

How can a party in possession be heard to say that such conveyance, as to him, is void, and at the same time say that it is valid for the purpose of making the grantee

the real party in interest? He must be consistent; and, when he claims that the deed is void as to him, he must abide by the results that follow. He can not claim that it is void as to him, and yet derive a benefit from it as if it were valid. He can not say that the deed is void as to him, and does not transfer the title, and yet say that the grantor's title is transferred thereby, so as to make the grantee the real party in interest. He can not be permitted thus to "blow hot and cold."

The supposed difficulty of maintaining an action in such case, in the name of the grantor, has been obviated in New York, by an amendment to the code, providing that "an action may be maintained, by a grantee of land, in the name of a grantor, when the grant or grants are void by reason of the actual possession of a person claiming under a title adverse to that of the grantor at the time of the delivery of the grant." *Hamilton* v. *Wright, supra.*

It has never been decided in New York, so far as we are advised, that, under the code, without the amendment above noticed, an action by such grantee could not be maintained in the name of his grantor, to recover the land. The amendment was adopted, as it would seem, to remove a doubt which had existed on the subject. WOOD-RUFF, J., in delivering the opinion of the court in the above cited case (p. 507), said: "When, therefore, the code had, in section 111, provided that every action should be brought in the name of the real party in interest, a doubt arose whether an action to recover lands thus conveyed could be brought by any one. If brought in the name of the grantee, he could, as against the party in possession, show no title; for, as against such party, his deed was void. If brought in the name of the grantor, it might be shown that he was not the real party in interest, because, if he recover, his recovery would inure, not for his own benefit, but for the benefit of the grantee.

" The code was, therefore, amended so as to exclude

such a conclusion, by adding to the section the provision," etc.

The provision alluded to is the one above set out.

We are satisfied, that, under our code, where land has been conveyed, which at the time was in the adverse possession of another, an action may be maintained to recover it from the party thus in possession, in the name of the grantor in such conveyance as plaintiff.

We are of opinion, for the foregoing reasons, that the second paragraph of the reply to the fourth paragraph of answer was good, and that the court committed no error in overruling the demurrer thereto.

We now proceed to other questions.

The first trial of the cause was had, and the first judgment was rendered, at the February term of the court, 1874. Afterward, at the April term of the court for the same year, the appellees applied for a new trial, under the statute authorizing new trials in such cases on the payment of costs, and showed to the court that they had paid the costs; and the court made an order granting a new trial in the cause. This proceeding seems to have been regular, and we see no objection to it, if it could have been had without notice to the opposite party, the appellants herein.

We are of opinion, that notice to the opposite party, of a motion or intended motion for a new trial, under the statute, is not necessary. The statute clearly contemplates, that such new trial may be granted without notice to the opposite party. The following sections of the statute provide for a new trial, and for the notice to be given:

" Sec. 601. The court rendering the judgment, at any time within one year thereafter, upon the application of the party against whom the judgment is rendered, his heirs or assigns or representatives, and upon the payment of all costs, and of the damages, if the court so direct, shall vacate the judgment and grant a new trial.

The court shall grant but one trial, unless for good cause shown.

" Sec. 602. If the application for a new trial is made after the close of the term at which the judgment is rendered, the party obtaining a new trial shall give the opposite party ten days notice thereof before the term at which the action stands for trial." 2 R. S. 1876, pp. 252–3.

The statute not only does not provide for any notice to be given the opposite party of an intended motion or application for such new trial, but it provides for a notice which is wholly inconsistent with the idea that a notice of the motion or application is necessary.

It provides, that, where the application for a new trial is made after the term at which the judgment was rendered, the party obtaining a new trial shall give the opposite party notice of that fact ten days before the term at which the action stands for trial. If it had been intended that notice of the application should be given, why was it required that a notice should be given that a new trial had been obtained? Would not the opposite party, if he were required to be notified of the application, have been regarded as in court and bound to take notice of the result of the application? We can not suppose that the Legislature intended that the opposite party should be notified of the intended application, and again of the result of the application, viz.: the granting of the new trial.

Where the application for a new trial is made at the term at which judgment is rendered, no notice to the opposite party of any kind is necessary. He, being still regarded as in court, must take notice of the steps taken in the cause at that term, and, if a new trial is granted, he must take notice of the fact. If a new trial is applied for after the term, and obtained, the opposite party must have ten days notice thereof before the term at which the cause stands for trial, in order that he may make due preparation for the trial. *Whitlock* v. *Vancleave*, 39 Ind. 511.

At the September term, 1874, the court, on the application of the plaintiffs, made a *nunc pro tunc* entry, setting aside and vacating the former judgment, as of the April term, 1874, the term at which the order was made granting a new trial. This is complained of as error. The *nunc pro tunc* entry did neither good nor harm. The order made at the April term, 1874, granting a new trial, operated as a vacation of the former judgment, without any special order setting it aside. *Maxwell* v. *Campbell*, 45 Ind. 360.

After the return of the verdict upon the final trial, and before judgment had been rendered thereon, a bill of exceptions informs us, that " the said defendants, by R. M. Johnson, one of their attorneys, acting as and for Orville T. Chamberlain, the attorney thereunto authorized by Lewis Downing, Helms Downing, Sample R. Downing, Sidney E. Chase and Zelia Chase, plaintiffs above named, and as and for said Chamberlain, attorney for said plaintiffs aforesaid, and by request of said Chamberlain, offered to file herein the written revocation by Helms Downing, Lewis Downing and Martha E. Downing, his wife, Sample R. Downing and Esther Downing, his wife, Zelia Chase and Sidney E. Chase, her husband, of all power of attorney by them heretofore executed to John Weston, which said revocation of all said power of attorney is in the words and figures following to wit: "

The instrument thus offered to be filed revokes any authority that may have been given by the parties to John Weston to act for them in relation to the land in controversy.

The bill of exceptions proceeds as follows: "And also offered to file therewith the written dismissal of this cause as to said plaintiffs, Lewis Downing, Helms Downing, Sample R. Downing, Sidney E. Chase, Zelia L. Chase and Theodore Downing, which said written dismissals are in these words," etc.

This paper, after naming the parties and the action,

proceeds as follows: " Come now the undersigned plaintiffs in the above entitled cause, children and heirs at law of Rufus Downing, deceased, and come also said defendants, and, by agreement of said parties, said cause is dismissed by the undersigned plaintiffs, as to their interest in said cause, and they order their names stricken from said cause; and they dismiss any and all attorneys who may have been acting for them in said cause, from any and all further business therein, and hereby expressly deny their right to proceed further therein, or to bind us by any thing they may say or do in said cause, from this time forth; and we hereby appoint Orville T. Chamberlain our attorney, for the purpose of carrying out and effecting the terms of this instrument."

The bill of exceptions further proceeds: "And be it further remembered, that thereupon the defendants, by their attorneys, moved the court to dismiss this cause as to each and every one separately and severally of said plaintiffs" (naming several), "to the granting of which motion as to each and every of said plaintiffs, and to the filing of each of said powers of attorney and written dismissals, Messrs. Baker & Mitchell then and there objected; and thereupon the court did overrule said motion, and refuse to dismiss said cause," etc. The bill also shows that the court refused to allow the papers mentioned to be filed, and that the defendants excepted.

We are of opinion, that the action of the court in this respect was clearly right.

With regard to the instrument purporting to revoke any power of attorney executed to John Weston to act for the plaintiffs, we do not see what connection it could have with the case. It did not appear that Weston was acting in any manner as the agent of the plaintiffs, in the prosecution of the cause. We may, therefore, dismiss that branch of the question involved.

Without adverting to other grounds on which the action of the court, in refusing to let the written dismissal

Steeple *et ux. v.* Downing *et al.*

be filed, and in refusing to dismiss the action as to any part of the plaintiffs, might be justified, one may be mentioned which is conclusive. We have seen, that, by the fourth paragraph of the defendants' answer, they alleged, that the plaintiffs had sold and conveyed the property in controversy to John Weston, and there was evidence adduced upon the trial tending to sustain the allegation. We have also seen the plaintiffs' reply thereto, and the effect thereof. What we have said in relation to the reply is sufficient to show that the plaintiffs could not dismiss the action, and thereby defeat the rights of their grantee, Weston.

This brings us to the questions arising on the defendants' motion for a new trial. We shall not set out the causes assigned for a new trial in detail, but will consider the points made in reference thereto.

The land in controversy is a part of one of the two sections granted to the children of Pierre Moran, or Peeresh, a Pottawattamie chief, by the treaty of August 29th, 1821. 7 U. S. Stat. at Large, p. 218.

The plaintiffs, in support of their title, offered in evidence a patent from the United States, to the children of Pierre Moran, for the whole of the section. The patent referred to the treaty, and recited that the section had been designated as one of the sections to which the children of Pierre Moran, or Peeresh, were entitled thereunder; the other section to which they were entitled having been theretofore patented to them. The patent bore date November 5th, 1857, and was signed:

" By the President,                JAMES BUCHANAN.
" By G. H. JONES, Sec't'y."

The defendants objected to the introduction of the patent in evidence, because, amongst other things, its execution was not proved, and because it did not purport to be signed by the President.

The objection was overruled and the patent admitted.

No proof was necessary of the execution of the patent. *Bowser* v. *Warren*, 4 Blackf. 522.

The counsel for the appellants have referred us to an act of Congress which, it is claimed, required the President, in person, to sign patents for land. But a later act, which was in force when the patent in question was issued, authorized the President's name to be signed to patents by a secretary. Rev. Stat. U. S., sec. 450.

No error was committed in admitting the patent in evidence.

The plaintiffs then offered in evidence a deed for the section of land, from the children of Pierre Moran, or Peeresh, to Rufus Downing. The deed referred to the treaty, and recited that the section had been located under the direction of the President of the United States. The deed bore date June 3d, 1834, and purported to have been made upon the consideration of $800. It was acknowledged before a justice of the peace of the county of St. Joseph, in the Territory of Michigan, and the official character of the justice was certified to by the deputy-clerk of that county.

Objection was made to the introduction of the deed in evidence, but was overruled, and the deed admitted.

The only substantial objection to the introduction of the deed in evidence grows out of the fact, that the certificate of the official character of the justice before whom the acknowledgment was taken was made by the deputy-clerk. His certificate ran in his own name as deputy-clerk, and not in the name of his principal, by deputy. If the official character of the justice before whom the deed was acknowledged was not sufficiently shown to admit the deed to record, then it would seem that the deed could not be read in evidence without proof of its execution. But we need not decide any thing upon this point, as the defect, if any existed, was cured by the act of March 4th, 1875, Acts 1875, Reg. Sess., p. 61, which was in force at the time the deed was given in evidence.

The act alluded to cured any defect in the certificate, and authorized the deed to be read in evidence without proof of its execution.

The plaintiffs also offered in evidence the approval of the deed by the President, endorsed upon, or attached to, the deed, dated June 26th, 1857. To this, objection was made, but the objection was, rightly as we think, over-ruled.

These lands, by the terms of the treaty, could not be conveyed by the grantees thereof, without the consent of the President of the United States.

It appeared that Rufus Downing, the grantee, died soon after the execution of the deed in question.

The plaintiffs in the action are the children and heirs at law of Rufus Downing, except Bernard Laffey and Sidney E. Chase, who are husbands of two of the heirs, and except Nelson Downing, who was a brother of Rufus Downing, as to whom more will be said hereafter in this opinion.

It is claimed by the appellants, that, as Rufus Downing was dead at the time the deed was approved by the President, no title passed thereby, there being no grantee *in esse.* The proposition is, that the deed was totally inoperative for any purpose, until it was approved by the President, and that it is to be regarded as having been executed on the day of its approval. This proposition seems plausible, but it can not, as we think, be maintained. The appellants admit, and indeed contend, that the title to the land vested in the children of Pierre Moran by the terms of the treaty, without any patent from the United States, and in this we concur. *Doe* v. *Beardsley*, 2 Mc-Lean, 412; *Longlois* v. *Coffin*, 1 Ind. 446.

It would seem that the title could not pass to the grantees under the treaty, until the tracts of land were located, as it was stipulated in the treaty, that " such tracts shall be located after the said cession is surveyed, and in conformity with such surveys as near as may be,

and in such manner as the President may direct." The appellants contend that the title vested in the grantees from the date of the treaty; and it may be, that, when the lands were located, the title of the grantees would relate back to the date of the treaty. But, however this may be, we think it may fairly be inferred, that the land had been located at the time of the execution of the deed by the children of Pierre Moran to Rufus Downing, and therefore, that the title was then in said children. The deed recited, that the land had been located under the direction of the President of the United States, and it is not to be supposed that a subsequent President would have approved the deed, unless the land had been so located. The title then, when the deed was executed, was in the children of Pierre Moran. When the deed from the children of Pierre Moran to Downing was approved by the President, the approval related back to the time of the execution of the deed, and vested the title in Rufus Downing, from that time. This was decided in the case of *Ashley* v. *Eberts*, 22 Ind. 55. But we are asked to overrule that case as not being supported by the authorities. The doctrine of the case has become a rule of property, and we follow it without again going into the authorities on the subject. See, also, *The Board of Trustees of the Wabash and Erie Canal* v. *Reinhart*, 22 Ind. 463; *Sumner* v. *Coleman*, 23 Ind. 91.

The title to the land, therefore, by relation, vested in Rufus Downing, in his lifetime.

As the deed was produced by his heirs, it will be presumed to have been properly delivered; and we are of opinion that no new delivery was necessary after the approval of the deed by the President.

Here we may notice another point. As we understand the brief of counsel for the appellants, they claim that the plaintiffs could not recover without showing that some of those under whom they claim had been in pos-

session of the land, and the case of *Huddleston* v. *Ingels*, 47 Ind. 498, is cited in support of the position. The plaintiffs trace their title back through their ancestor, Rufus Downing, and the children of Pierre Moran, to the United States. In such case, there is no necessity for proof of possession by any one under whom the plaintiffs claim. The plaintiffs traced their title back to the source and fountain of titles.

The case cited, although the language may be obscure, does not decide, that, in such a case as the present, such possession is necessary in order to make out title.

On the trial of the cause, the defendants offered to prove by John Weston, "that said approval of the President was obtained by the fraud and misrepresentations of the said Weston, and those acting for him; and that the deed from the plaintiffs to said Weston, for said land, was obtained from them by the fraud practised upon said plaintiffs by said Weston; and that, at the time said approval purports to have been made, the grantors named in said deed were not in or about the vicinity, but long prior thereto had been removed by the Government of the United States to the Western Territories; and that, when said approval was obtained, the said deed, thus approved, was, by the President, sent to said Weston, to be by him delivered to the grantors therein named, and by them, if they had received their pay therefor, to be delivered to the plaintiffs; and that neither the plaintiffs, nor their said pretended grantors, ever had possession of or saw said deed, after said pretended approval thereto was obtained; and that whatever title the said John Weston had from said plaintiffs, was obtained by him after he knew such approval of the President was attached to said deed, and while the same was in his possession, and under the representations by said Weston to them that said approval of the President had never been obtained, and that, since their father, Rufus Downing, was now dead, it could probably never be obtained, and

that, therefore, the deed to their father was void and worthless."

This evidence, on objection made thereto by the plaintiffs, was excluded.

We are of opinion, that the evidence was correctly excluded. It may be divided into two classes, viz.: That which went to attack the validity of the deed from the children of Pierre Moran to Rufus Downing; and that which sought to attack the conveyance from the plaintiffs to Weston. What had the defendants to do with the assumed fraud in relation to either of those conveyances?

The defendants did not show any title from the children of Pierre Moran; and if Weston practised any fraud upon those children, whereby the approval of the President to the deed was procured, and the title to the property vested in Rufus Downing, that is a matter of which the children of Moran alone can complain. The defendants were not injured by the supposed fraud, nor does it concern them. They can not interpose it for the protection of their possession of the property, because the title passed when the deed was approved by the President, and the children of Pierre Moran, or their privies, alone could question the transaction. So, on the other hand, the defendants have nothing to do with the supposed fraud in procuring the conveyance from the plaintiffs to Weston. That is a matter that rests entirely between the plaintiffs and Weston, and in no manner concerns the defendants.

The plaintiffs introduced, over the objection of the defendants, a map of the township proved to have been made by an engineer and surveyor from the original field notes. We can not say that this was error. The map may have been competent for some purposes, and we do not see how it could injure the defendants.

Two tax deeds were given in evidence; one to Alexis Coquillard, dated September 5th, 1849, and one to D. H. Henry,

dated February 6th, 1868. There was no evidence given, however, that the law had been complied with, in the various steps necessary to be taken in order to constitute a valid tax title. But if these deeds, on their face, without further evidence, showed an outstanding title, the plaintiffs were not entitled to recover, whether the defendants had any title under them or not.

The defendants asked the following instruction, viz.:

"The plaintiffs in this action must recover, if at all, upon the strength of their own title; and, if you believe from the evidence, that, prior to the beginning of this action, viz.: on the 5th day of February, 1866, the land was legally sold for taxes, and, in pursuance of such sale, was conveyed by the auditor, on the 6th day of February, 1868, to one D. H. Henry, in whom such title still remains, and that neither the plaintiffs, nor any one representing them, were, at the time of such sale, or have been since, in possession of said land, then your verdict must be for the defendants."

This charge the court refused as asked, but gave it with the following addition:

"But as there is no evidence of such title other than the auditor's deed, such evidence alone does not show any title in D. H. Henry."

It is claimed by the appellants, that the deed was *prima facie* evidence of title, and that the addition appended to the charge was erroneous.

The deed was executed under the provisions of the act of 1852, which provides, amongst other things, that the conveyance " shall vest in the grantee an absolute estate in fee-simple," and that " such deed shall be conclusive evidence of the truth of all the facts therein recited, with the exception of the fact that the payment of the taxes for which the lands named therein were sold, had not been made by or on behalf of the proper owner of such lands in due time, and to the proper officer; of which

last named fact such deed shall be held as *prima facie* evidence, and no more," etc. 1 G. & H., p. 108, secs. 166, 168.

We take it to be clear, that the provision that the conveyance shall vest in the grantee an absolute estate in fee-simple, has reference to the quantity of estate to be conveyed by such deed, and can not be taken to mean that such estate shall vest in the grantee unless the law has been complied with, in the steps required to be taken to authorize the sale, and in the making of the sale. The deed is not conclusive or *prima facie* evidence of any thing but the facts recited therein. Hence, every fact necessary to constitute a valid sale, not recited in the deed, must be otherwise shown, or no title will be conferred by the deed. *Gavin* v. *Shuman*, 23 Ind. 32; *Ellis* v. *Kenyon*, 25 Ind. 134. Upon looking into the deed to Henry, we find that it omits to recite many facts necessary to constitute a valid tax title. It omits to recite, we believe, all the matters pointed out in the two cases above cited, and perhaps others that need not be particularized.

The court committed no error in appending the addition to the charge.

The defendants asked three other charges, which were refused, but, on comparing them with the charges given by the court, we think they were substantially embraced by the charges given, and it will be useless to extend this necessarily lengthy opinion, by setting them out.

The appellants complain of the 13th, 14th, 15th, 16th and 17th instructions given, and say of them:

"These instructions were wrong, in that they assumed, and, in effect, informed and instructed the jury, that, though the appellants may have had possession, in good faith, of the land, for the period of twenty years preceding the commencement of this suit, still, if such possession has in any manner, during that period, been disturbed, or its continuity broken, it will avail them nothing, against the appellees. This is not, nor was it ever, the law."

We do not think that the instructions are open to the

objection made. They did, indeed, inform the jury that the possession must have been continuous, in order that the defence of the statute of limitations should prevail; and this is clearly the law. If the continuity of the possession of the defendants, or of those claiming in privity with them, were once broken, the true owners would be deemed constructively to be in possession, and the statute of limitations could be deemed to have commenced running only from the time the defendants' possession was resumed. *Law* v. *Smith,* 4 Ind. 56; *McEntire* v. *Brown,* 28 Ind. 347.

The following is a part of one of the charges given:

" The defendants claim the land in dispute, by virtue of a title raised and created alone by taking and holding possession thereof for at least twenty years before the suit was commenced, and not through, or by virtue of, any paper title."

The counsel say the court had no right to so limit the defendants' claim of title.

As applied to the case made, the charge was not erroneous, for no paper title was shown to have been in the defendants, save what may have been derived through the tax deeds, which conveyed no title whatever.

The charges given placed the law of the case fully and fairly before the jury.

A question of evidence remains to be considered. It appeared that one Borders, under whom the defendants claimed, had cut timber upon the land, and had hauled sand therefrom, as early as 1851, or before that time, and the evidence tended to show that he was in possession thereof.

The plaintiffs asked of Joel Ellis, one of their witnesses, the following question: " You may state if you had any conversation with Borders before he sold out to Steeples, as to his right of title to this ten acres? if so, when?"

The witness answered: " I had, in 1851."

Question: " What did he say?"

This latter question was objected to by the defendants, but the objection was overruled, and witness testified to statements made by Borders, not necessary to be here repeated, in disparagement of his rights in the land, and disclaiming any title thereto.  This evidence was clearly competent.

The declarations of a party in possession of land are competent evidence against those claiming the land under him, to show the character of his possession and the title by which he held it, but not to sustain or destroy the record title.  *Dodge* v. *Freedman's Savings and Trust Co.*, 3 Otto, 379; 1 Greenl. Ev., sec. 189; *Bunberry* v. *Brett*, 18 Ind. 343.

We have thus considered the substantial points made in the brief of counsel for the appellants, except in one particular, and thus far find no error in the record.

The remaining point will now be considered.  This relates to Nelson Downing, one of the plaintiffs.  He was a brother, and not one of the heirs, of Rufus Downing. The evidence did not show that he had any title to the premises, and the jury found, in answer to interrogatories, that he had none, though the general verdict was in favor of all the plaintiffs, and the judgment was accordingly rendered for all the plaintiffs.  We think the error in this respect is well saved; and it is insisted by counsel for the appellants that for this error the whole judgment should be reversed, but we are of a different opinion.

In addition to the general provisions of the code in respect to the right of one or more of several plaintiffs to recover against one or more of several defendants, we have the following provision in the act in relation to the recovery of real estate, viz.:

" Where there are two or more plaintiffs or defendants, any one or more of the plaintiffs may recover against one or more of the defendants, the premises or any part thereof, or any interest therein, or damages according to the right of the parties."   2 R. S. 1876, p. 252, sec. 600.

It is clear, that, under this statute, a part of the plaintiffs could recover; and as the verdict, including the answers to interrogatories, found the title of the land to be in the plaintiffs, other than Nelson Downing, the judgment should have been rendered in favor of the other plaintiffs, for the recovery of the land and their costs, and in favor of the defendants, against Nelson Downing, for costs. The costs should have been apportioned as might be right.

The judgment below in favor of all the plaintiffs below, except Nelson Downing, is affirmed; and, as to Nelson Downing, the judgment below is reversed; the costs in this court are to be paid seven-eighths by the appellants, and one-eighth by Nelson Downing.