## Case No. 11,979.

### ROCKHILL v. HANNA.

#### [4 McLean, 200.] [1]

Circuit Court, D. Indiana. May Term, 1847.

TRIAL—OYER—NOT IN POSSESSION.

The plaintiff is not bound to give oyer of an instrument, of which he is not in possession; and which is as accessible to the defendant as to the plaintiff.

At law.

Mr. Morrison, for plaintiff.
Mr. Smith, for defendant.

[See Case No. 11,980.]

## Case No. 11,980.

### ROCKHILL et al. v. HANNA.

#### [4 McLean, 554.] [1]

Circuit Court, D. Indiana. May Term, 1849.

JUDGMENT—LIEN ON LANDS—PRO RATA DISTRIBUTION.

1. Under the laws of Indiana on all judgments there is a lien on the lands of the defendant ten years.

2. Judgments entered on the same day, create equal liens, and the issuing of an execution on any one of them does not affect the lien on the others.

[Cited in Elston v. Castor, 101 Ind. 437.]

3. The land of the defendant being sold, a pro rata distribution of the proceeds should be made in satisfaction of the judgments.

4. The diligence of a plaintiff can not give him an advantage over the others.

5. The judgment lien, in its effect, is similar to mortgage liens.

6. A sale on one mortgage, the other mortgagees not being made parties, can not affect their liens.

7. The sale will be considered as subject to the other mortgages, to the same extent, they being equal liens, etc.

[This was an action at law by Thomas C. Rockhill, Wade T. Smith, and William P. Rockhill against Roberta Hanna, Asa B. Strong, Edward Heizer, Aaron Aldridge, Robert B. Hanna, David Shields, Thomas Johnson, Jeremiah Johnson, and George Bruce.]

Morrison & Majors, for plaintiffs.
Smith & Newcomb, for defendants.

OPINION OF THE COURT. This action is brought against the marshal and his se-

curities, charging him with a false return on an execution, by which the plaintiffs have failed to receive the amount made on their execution, etc. The defendant pleaded specially several pleas, that certain judgments were obtained at the same term, and that executions were issued, etc. And that the defendant Hanna was ready to pay and had offered to pay, a pro rata amount on the execution of the plaintiff. To these pleas the plaintiffs filed demurrers assigning the cause of demurrer. The fourth breach assigned in the declaration is, "that the money made belonged to the plaintiffs, and that defendant Hanna refused to pay it to the plaintiffs, or return it, etc., as commanded." The fifth breach is, "that the marshal's return is false and partial, in that it assumes that the sums awarded and apportioned by him, were due to the persons to whom he awarded them, when in fact much less was due on the executions adverse to the plaintiffs and much more was justly due to them." These two breaches are not placed on the ground that the plaintiffs had priority by reason of their superior diligence, but as a matter of right appearing from calculation. The plea purports to go to the whole declaration, but does not answer either of the above breaches. In this the plea is defective and the demurrer to it must be sustained. The marshal was required by the writ to make the money, and have it at the return of the writ. If he undertake to pay over according to the rights of the plaintiffs in the several executions, he acts at his peril, and he is liable should he make any other than a legal application of the money in his hands.

The facts out of which the principal questions arise are: 1. That the plaintiffs obtained a judgment on the 19th of Nov., 1838, against John Allen for $957 24. A second judgment was entered in favor of Newlin and Marshal against Allen, on the same day, for $1,093 52; and a third judgment in favor of Lester, Price and Cook, against Allen, was entered on the same day, for $3,056 71. Fletcher and Butler were attorneys in the last two named cases. On the 7th of February, 1839, was issued a capias ad satisfaciendum, on the first named judgment, which was served and a prison bound bond was taken by the marshal, 22d March, 1839. The defendant remained in custody until the act of Indiana of 1842, providing for the enlargement and discharge of debtors, which being adopted by congress, in a general enactment, that in regard to imprisonment for debt, the state law should be followed by the courts of the United States, the defendant was discharged from his imprisonment. On the last two judgments, executions, 17th December, 1838, were issued, which were returned nulla bona. And on the 5th March, 1839, an alias writ of scire facias on each of the last two judgments, was issued, which were levied upon several tracts of land. Before the judgments were entered Allen sold

the land and conveyed it in fee simple to one Coats, who gave two promissory notes for $2,000, one payable 13th of August. 1841, the other the 13th of August, 1842, and also executed a deed of mortgage on the land. The mortgage was assigned to Fletcher and Butler as security for the payment of the two judgments. and another claim of $1,000. Butler and Fletcher agreed to stay proceedings on the executions, until the 16th of May, 1844; when writs of vend. exponas were issued to be executed with the consent of the defendant Allen, dated the day of sale. On the 30th of March, 1844, a writ of fieri facias was issued on the judgment in favor of Rockhill, Smith & Rockhill, and the marshal, on the 12th of April, 1844, levied it on the land, which had before been levied on by similar writs on the other judgments, the 5th of March, 1839. The land was struck off on the sheriff's sale to Fletcher and Butler, for $1,360, as described by the said writ fi. fa. The venditioni exponas being in the hands of the marshal, Fletcher and Butler had no knowledge of the execution issued on the Rockhill judgment until the 16th of May, 1844. On application to the court, founded upon affidavit, the above sale was set aside, and executions being issued on all the judgments, the marshal returned that he had sold the land on all the executions. The court directed a pro rata distribution of the proceeds of the sale on all the judgments. And the question is made from the pleadings in this action, whether the Rockhill, Smith & Rockhill judgment is entitled to a preference over the other two judgments, in the application of the proceeds of the sale. The plaintiffs' counsel contends that it is, by reason of the levy made on the land on the 12th of April, 1844, under an execution on the Rockhill judgment. The previous levy on the same land, made the 5th of March, 1839, under the other judgments, he contends had become inoperative by not having been prosecuted for some five years. The plaintiff's counsel claims that by his superior diligence, he is entitled to the full satisfaction of his judgment to the exclusion of the other two. And he relies confidently on two decisions in New York, and one by the supreme court of Indiana, which adopted the New York decisions. In the case of Adams v. Dyer, 8 Johns. 347, the court held, where judgments in favor of different plaintiffs against the same defendants, are filed and docketed on the same day, the plaintiff who first issues a fi. fa. the execution of which is commenced by the sheriff's advertising the defendant's lands for sale, gains a preference, as to the lands, which can not be defeated by a subsequent execution issued by another plaintiff. And afterwards in the case of Waterman v. Haskin, 11 Johns. 228, it was decided, that where judgments in favor of A and B respectively, against C were filed and docketed the same day, and A issued a fieri facias to the sheriff of New York, and B

afterwards issued a testatum fi. fa. to the sheriff of W, under which the sheriff levied on the lands of C, and advertised the same for sale. and a few days afterwards, issued a testatum fi. fa. to the sheriff of W; held that the sheriff of W was first to apply the money levied by him to the satisfaction of B's execution.

And in the case of Michaels v. Boyd [1 Cart. (Ind.) 259], decided November term, 1848, the supreme court of Indiana held, that land acquired by the defendant subsequent to two judgments entered against him, that the lien equally attached on both, although one of the judgments was prior in date to the other. And they say: "The next question is, whether the circumstance that Starr and Smith's execution was issued and levied on the land before the issuing of the plaintiff's execution, makes any difference." This point they say is settled by authority, and they refer to the cases in Johnson above cited, and to a case in 1 How. (Miss.) 39. In the present case, they say: "Starr and Smith's execution being the first issued and levied, gives them the priority, as the most vigilant creditors," etc.

These authorities are entitled to the highest respect and generally we should follow them as safe guides. but in the present case we can not do so, unless the decision in Indiana shall be considered as giving a construction to a statute of the state, in which case our rule of decision requires a conformity to it.

We suppose it is clear, that the decision does not depend upon the construction of a statute. There is no provision in the statutes of Indiana which touches this question or can have any bearing in its decision. And this point is left with the remark, that it must rest upon general principles, as to diligence, there being no provision on the subject, in regard to executions where the judgment liens are equal.

By the statute of Indiana, a judgment creates a lien on the real estate of the defendant, from the time of its rendition to the expiration of ten years. This provision is unequivocal, and is as binding as a mortgage. In Rankin v. Scott, 12 Wheat. [25 U. S.] 507, the court said: "It is a universal principle, that a prior lien is entitled to prior satisfaction out of the thing it binds, unless the lien be intrinsically defective, or is displaced by some act of the party holding it, which shall postpone him at law or in equity. Mere delay in proceeding to execution is not such an act."

In the case under consideration, the liens are equal. The judgments were rendered on the same day. And it is contended by the counsel that the most diligent plaintiff obtains a preference over the other two. He admits that this diligence can not affect the lien of a prior judgment. If it can not affect a prior judgment. how can it affect a lien of equal date? The lien does not depend upon

a race of diligence on the executions. It stands good, under the statute, for ten years. It is not liable to be misplaced by the greater diligence of the plaintiffs in the other cases. The statute makes no provision on the subject, the lien is complete, the judgment being kept alive for ten years.

Suppose three mortgages had been given on the same land and on the same day, to the plaintiffs of the three judgments. Could either of the three mortgagers, by filing a bill or otherwise, acquire a priority over the others? And if in such case there should be a sale of the premises under one mortgage, would that displace the others? And suppose the marshal having the money in his hands, asks the court how he shall distribute it. Would any intelligent court direct the proceeds of the mortgaged premises to be paid over to the plaintiffs at whose suit the land had been sold? The distribution would, undoubtedly, be made pro rata on the judgments. They being valid and creating a lien on the land, no other disposition could be made of the money for which it was sold. ·

In what respect do the liens of the judgments differ from the liens of the mortgages? They are equal in all respects; and if the one can not be displaced by superior diligence, neither can the other. This point is so clear, that it is difficult to use any illustration which can make it clearer.

As regards personal property, where the delivery of the execution to the sheriff or the levying of it, creates a lien, diligence determines the right; because the right or lien depends upon the first levy. The lien does not proceed in such case from the judgment, as where the judgment binds real property, but from the act of levying by the officers under the execution. And it is the rule in such cases, which has influenced the decisions referred to. But it is as inapplicable to judgment liens as to mortgage liens. In neither case is either party bound to active diligence; so long as the judgment lien runs, the plaintiff may be passive, keeping his judgment alive, and he can not be prejudiced by the action of others. In Azcarati v. Fitzsimmons [Case No. 390], it is said: "The court would not be disposed to aid the plaintiff in an execution which had been dormant for a considerable time, to the disadvantage of a party having equal equity, although he had been equally negligent."

We think that the liens of these judgments can not be displaced by superior diligence of one of the parties, or by the exercise of judicial discretion. They stand, and stand equally, by legislative provision; and the plaintiffs in each judgment having equal right to claim satisfaction out of the land sold, in proportion to the demands of each, and the proceeds, no other application of the proceeds can be legally made.

But in what consists the superior diligence of the plaintiffs in the Rockhill judgment? The plaintiffs in the other cases caused a levy to be made on the land the 5th March, 1839. At that time Allen, the defendant, was in prison bounds, under the cas sa issued on the Rockhill judgment, and remained in prison for several years. After his discharge, and not until the 30th of March, 1844, was an execution levied under the Rockhill judgment. The land was advertised, and on the day of sale the marshal had in his hands two writs of vend. exponas, commanding him to sell the land on the other two judgments. The sale was set aside by the court, and executions were issued on all the judgments, and the sale was made on all. Under these circumstances, the court directed a pro rata application of the proceeds of the sale on all the judgments.

Now, if the decision were to turn on the question of diligence, how should the money be applied? The levy on the land under the two judgments, being five years before the Rockhill levy, it is contended that the first levy was made void by a want of diligence. There is no provision of the statute, that a levy shall be prosecuted with diligence, nor is there any such principle of law. If a levy be made, merely to cover the property, it is fraudulent, and on that ground it may be set aside. But, we are speaking of a bona fide procedure. The levy on real estate may be permitted to lie to the extent of the lien of the judgment, unless other levies shall be made under junior judgments, or judgments rendered on the same day, having equal liens. And, in such a case the land being sold must be distributed as the prior or equal liens of the judgments shall require. An equal lien is not less strong for a pro rata amount of the proceeds, than a prior judgment is for satisfaction.

The superior diligence would seem to be, not on the part of the Rockhill plaintiffs, but by the plaintiffs in the other judgments. But this is not a question of diligence, but as to the effect of equal judgment liens, under the circumstances; and we hold, that the liens being equal, the proceeds of the land sold must be paid on the executions pro rata, without regard to the means by which the sale was effected.

As the above decision did not determine the action for a false return, at a subsequent term, the above points were again argued, and the court intimated that their views remained unchanged, and at the earnest request of the counsel for the plaintiffs the points were certified to the supreme court. [Whereupon it was adjudged as follows: 1st. That plaintiffs in this suit are not entitled to more than their distributive share of the proceeds of the sale. 2d. That they are, consequently, not entitled to the whole proceeds to the extent of what is due on their judgment. 3d. The executions of Siter & Co. and of Price & Co. are entitled to be first satisfied from the proceeds of the sale. 15 How. (56 U. S.) 189.]