Doe on the Demise of HUTCHINSON *v.* HORN.

May Term,
1849.

Doe
v.
Horn.

| 1 | 363 |
| 130 | 376 |

The seduction of an innocent woman by a pretended marriage, the seducer having a wife living, entitles the injured party to a compensation in money and is deemed in law a valuable consideration for a grant.

If the consideration be valuable and adequate, the title of the grantee may be valid, notwithstanding the intention of the grantor to defraud his creditors thereby, if the grantee has no knowledge of such intention.

The title of a purchaser at sheriff's sale, relates back to the date of the judgment under which the premises were sold.

ERROR to the *Allen* Circuit Court.

SMITH, J.—This was an action of ejectment. Trial; verdict for defendant; motion for new trial overruled; and judgment accordingly.

*Friday, June 1.*

The material facts given in evidence were as follow:

One *Christopher Jourdan*, under whom both parties claim, emigrated from *Virginia* to the county of *Allen*, in this state, about the year 1830. He represented himself, and was considered by his neighbors, a young unmarried man, and he acquired a reputation for morality and industry. In the year 1837, he courted and married *Matilda Beard*, a young woman of good character and respectable family. Her parents gave her an out-set suitable to their circumstances and *Jourdan* and the said *Matilda* lived together, without any suspicion by the latter in relation to the validity of the marriage. In *March*, 1841, a rumor appears to have reached the neighborhood that *Jourdan* had left a wife in *Virginia*, who was still living. About the same time, a claim for money due by *Jourdan* to one *John Miller*, was sent from *Virginia* to *Thomas Johnson*, Esq., of *Fort Wayne*, for collection. A suit was instituted accordingly, and *Jourdan* was arrested. To procure his release from arrest, he executed a cognovit on the 11th of *March*, 1841, for the confession of a judgment in favor of *Miller* for 702 dollars and 92 cents. On the next day, namely, the 12th of *March*, 1841, he prepared a deed which purports to convey several tracts of land to *Matilda Beard*, *Margaret Ann* and *Mary Jane Jourdan*, (the two latter children of the said *Matilda* by him during

their cohabitation,) in consideration of the payment of 2,000 dollars. After preparing the deed and before its delivery, *Jourdan* declared to two witnesses, that his object was to place the land beyond the reach of execution; that he had received no money from *Matilda*, but he preferred that she and her children should have it, rather than it should be sold to pay his debt to *Miller*. It appears that, soon after making these declarations, he went home, and his appearance indicating much agitation and distress, *Matilda* inquired of him what had happened. He then told her that he had greatly wronged her and her children, that he had a lawful wife in *Virginia*, and that to compensate her in some measure for the deceit and injury he had inflicted upon her, he had made her a deed for his land to enable her to support herself and his two children. He then delivered the deed to her, and that night left the neighborhood and never after returned. *Matilda* afterwards married *Horn*, the defendant.

A judgment was rendered upon the cognovit by the *Allen* Circuit Court at the *April* term, 1841. A *fieri facias* issued which was levied upon the premises in controversy. No sale having been made during the life of the execution, it was followed by a *venditioni exponas* and the property was bid off at a sale, by *Johnson*, the attorney of the judgment-plaintiff. The sale and proceedings under the *venditioni exponas* were afterwards set aside by the Circuit Court upon the motion of *Jourdan*. An *alias* writ of *fieri facias* issued on the 16th of *December*, 1844, under which the premises described in the declaration were sold to *Hutchinson*, the lessor of the plaintiff, who had become the owner of the judgment by assignment, and had notice of the existence of the deed before mentioned.

After the testimony was closed, a number of instructions were given to the jury at the request of the parties, some of which were to the effect, that the seduction of an innocent woman, under such circumstances as were disclosed in the present case, entitles the injured party to a compensation in money, and will be deemed in law a valuable consideration for a grant; and that if it ap-

peared from the evidence that the consideration of the
deed from *Jourdan* to the said *Matilda* and her children
was founded upon the recompense she was entitled to for
the injury she had sustained, and the conveyance had
been accepted by her as such compensation, they should
find for the defendant.

The intention of *Jourdan* to defeat his creditor is clear-
ly proved, but there is no proof whatever that *Matilda*
had any knowledge of it. The case must therefore turn,
so far as regards the property described in her deed, upon
the nature of the consideration moving from her, for if
that was valuable and adequate, the title of the grantee
may be valid notwithstanding the fraudulent intention of
the grantor. *Frakes* v. *Brown*, 2 Blackf. 295. We can
have no doubt as to the legal right of *Matilda*, to claim a
pecuniary compensation for the injury she had received
through the deceit practised upon her by *Jourdan*, and we
apprehend that no Court could easily define what would
be an adequate recompense for so grievous a wrong. To
this extent we think the instructions are right, though
they contain repetitions of the same principle in so many
different forms and with so much looseness and uncer-
tainty in the words and phrases used, that the whole
taken together, seem better calculated to confuse the
minds of a jury than to give them any clear idea of the
questions really in issue or the law applicable to them.
But the premises described in the declaration and in the
sheriff's deed to *Hutchinson*, consist of several tracts of
land, one of which is not found in the deed from *Jourdan*
to *Matilda*, and no defence having been interposed as to
that tract, the lessor of the plaintiff was entitled to re-
cover it, whatever might have been the state of the case
as to that part of the property in controversy which was
covered by the deed last mentioned.

It is contended by the counsel for the defendant in
error, that, as the sheriff's deed under which the lessor of
the plaintiff claims bears a later date than that of the
demise laid in the declaration, the plaintiff should have
been non-suited. But as the title of the plaintiff's lessor

relates back to the date of the judgment under which the premises were sold, it cannot be said that the demise is laid before the commencement of his title. *Smith* v. *Allen*, 1 Blackf. 22. It is also urged that the sale under the *venditioni exponas* was valid and created an outstanding title. That sale was, however, set aside by the Circuit Court, and it cannot be made a subject of inquiry in this suit, whether the Court acted erroneously or not in that matter.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded for a new trial.

*R. Brackenridge* and *H. Cooper*, for the plaintiff.
*D. H. Colerick* and *J. G. Walpole*, for the defendant.