## No. 11,534.

### Elston et al. *v.* Castor et al.

Sheriff's Sale.—*Statute of Frauds.*—Where it appears in a special finding that a sheriff, at the time of a sale of land by him on execution, wrote and signed a certificate of sale to the purchaser, it will be presumed by the Supreme Court that such certificate conformed to the statute and was, therefore, sufficient to take the sale out of the statute of frauds.

Same.—*Voidable Sale.*—Where a sheriff sells land on execution, and there is delay, not by agreement, in the payment of the purchase-money, which is afterward paid, and the certificate of sale is then delivered by

Elston *et al. v.* Castor *et al.*

the sheriff to the purchaser, the sale is valid as to persons who have not acquired intervening rights, though before such consummation voidable for want of compliance with the statute of frauds.

SAME.—*Inadequacy of Price.—Collateral Proceeding.*—Where land sold by a sheriff on execution was, at the time of the sale, subject to judgment liens, the owners of which were entitled to redeem from such sale, it was treated as not void because of inadequacy of price in a collateral suit brought by the holder of such a lien.

SAME.—*Equal Liens.—Priority Through Diligence.*—Where a person becomes the owner of land, and judgments theretofore existing against him thus at once become liens on the land, the liens are equal; but the one of the holders of such liens who first causes execution on his judgment to be issued and levied on such land, thereby obtains a lien superior to those of other judgments, the owners of which may, as junior judgment creditors, redeem from the sale under such execution.

SAME.—*Bankruptcy.*—A judgment lien may be enforced by a sale of the property upon which it is a lien, after the bankruptcy of the judgment debtor, if execution under such judgment was levied on such property before such bankruptcy.

SAME.—*Assignee's Conveyance.—Merger.*—Where a judgment debtor whose land had been sold on execution became a bankrupt during the year for redemption from such sale, his right to redeem passed to his assignee in bankruptcy; and where, without redeeming, the assignee sold and conveyed such land subject to liens thereon to the holder of the sheriff's certificate of sale, who bought of the sheriff and of the assignee, not in trust for the judgment debtor but to protect his own interest and without fraud, the title derived under the sheriff's sale was not merged in a title so acquired from said assignee, so as to prevent such pur-·chaser from completing his title under the sheriff's sale, at the expiration of the year for redemption, by taking the sheriff's deed.

From the Hamilton Circuit Court.

*F. M. Trissal, G. Shirts* and *W. R. Fertig,* for appellants.

*D. Moss, R. R. Stephenson, H. A. Lee* and *R. Graham,* for appellees.

ZOLLARS, C. J.—This is an action by appellants to have the title claimed by appellee Samuel B. Castor to the lands described in the complaint declared void, certain judgments which were liens upon the lands declared satisfied, to have appellants' judgment declared a superior lien, and to have the lands ordered sold in satisfaction thereof. The facts as found by the court below are as follows:

Prior to the 4th day of April, 1877, judgments had been rendered against appellee Wm. H. Castor, as follows: In favor of appellants for $3,762.44; in favor of First National Bank of Lebanon for $3,546.70; in favor of Marion W. Essinger, administrator of the estate of Nathaniel F. Dunn, deceased, for $3,228.56; in favor of John V. Suman for $1,769; in favor of Hazelrigg and other for $1,222.25. By the death of his wife, Martha J., on the 4th day of April 1877, Wm. H. Castor became the owner of the lands described in the complaint, which were worth $8,780. Subsequent to this, another judgment for $6,233.29 was rendered against Wm. H. Castor, in favor of other parties, among them appellee Samuel B. Castor. This was a judgment over in a foreclosure proceeding. The mortgage was upon lands worth $9,725, other than those described in the complaint. On the 31st day of January, 1878, an execution was issued upon the judgment in favor of Essinger, administrator, and levied upon the lands described in the complaint, which was the first and only execution levied after the death of the wife Martha J. The land not having been sold, a *vendi.* was issued, and, after due publication, the lands were sold on the 21st day of September, 1878, for $1,125 to one George Bonebrake, he being the highest and best bidder.

At the time of this offer for sale and bidding off, the defendant Samuel B. Castor, brother of the defendant William H. Castor, was present, and it was then arranged and agreed between the sheriff, said Bonebrake, and said Samuel B. Castor, that said Samuel B. Castor was to pay the sum of eleven hundred and twenty-five dollars, bid as aforesaid, and get the certificate of purchase. No money was paid at the date of the sale, nor did Bonebrake ever pay the amount of his bid, but afterwards, to wit, on the 7th day of November, 1878, said Samuel B. Castor paid to said sheriff said sum of eleven hundred and twenty-five dollars, and the certificate of purchase that had been made out in the name of said Bonebrake on the 21st day of September, 1878, was, on said 7th day of

November, 1878, assigned to said Samuel B. Castor by said Bonebrake by written endorsement thereon. The money with which the bid at the sheriff's sale was paid and that procured the sheriff's certificate was furnished by said Samuel B. Castor. At the time of the sheriff's sale there was no written memorandum, contract, or agreement showing the terms of the sale, made out and signed by the sheriff.

"8. On the 27th day of August, 1878, said William H. Castor filed his voluntary petition in the district court of the United States for the district of Indiana, asking to be adjudged a bankrupt, and on the 29th day of August, 1878, was adjudged a bankrupt, and one Robert C. Losey was appointed his assignee, to whom the register in bankruptcy for said district transferred by deed of assignment all of the property of said bankrupt.

"9. On the 7th day of January, 1879, said defendant Samuel B. Castor proposed to said assignee in bankruptcy that he would purchase all of said bankrupt's real estate in said county of Hamilton, subject to all encumbrances thereon, and would give therefor the sum of seventy-five dollars. And said assignee, on that day, by a petition to said district court, in which he recited said offer, procured an order directing the sale of all of said bankrupt's real estate to said Samuel B. Castor, subject to all encumbrances thereon, for said sum of seventy-five dollars, and in pursuance of said order said sale was made and confirmed, and all of said bankrupt's real estate, in pursuance of the terms of said sale, was, on said 7th day of January, 1879, conveyed to said Samuel B. Castor.

"10. In the schedules annexed to his petition to be adjudged a bankrupt, said William H. Castor set forth all the judgments and liens hereinbefore mentioned as the liens existing against his real estate; also, therein stated that there then existed, in addition to the liens aforesaid (hereinbefore described), judgments rendered in the Hamilton Circuit Court against him as follows: One judgment in favor of the First National Bank of Crawfordsville, for the sum of $3,689.25,

and one in favor of the same bank for the sum of $1,532.25; also one in favor of the Second National Bank of Lafayette, Indiana, for the sum of $3,503.53; but in fact no such judgments had been rendered in said Hamilton Circuit Court, nor had any transcripts of any such judgments from any other court been filed in the office of the clerk of said Hamilton Circuit Court.  And in his said schedules and petition, said bankrupt omitted any statement, showing that his real estate had been levied upon by virtue of the executions upon said Essington judgment.  At the time of the adjudication of said William H. Castor as a bankrupt, the plaintiffs in this suit were not residents of Hamilton county, Indiana.

" 11. The judgments in favor of the First National Bank of Lebanon have been paid in full, but were not paid by either said William H. Castor or said Samuel B. Castor, nor collected from the property of either.

" 12. After the purchase from said assignee, to wit:  On the 21st day of September, 1879, said Samuel B. Castor paid the sum of five hundred dollars to the holder of said judgment in favor of John V. Suman, and in consideration of such payment received an assignment of said judgment.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

" 16. Samuel B. Castor never at any time took or claimed the possession, use, or rents of any of the real estate purchased at said sheriff's and said assignee's sale, nor has he exercised any acts of ownership over the same, but said William H. Castor has continuously since said sheriff's sale had exclusive possession and use of all of said real estate, and received all the rents and products thereof, rendering no account thereof to said Samuel B. Castor, and he, said William H. Castor, has also expended $2,000 in making improvements upon the lands described in the complaint; that no verbal or written contract or agreement between said Samuel B. Castor and William H. Castor, made at any time since said sheriff's sale, by which said William H. was to have the possession, use and rents of said real estate, has been entered

into, except he said to William instead of going west he could continue in charge of the farm and try to regain his fortune; but the possession and receipt of the rents by said William H. Castor have been with the knowledge and consent of said Samuel B. Castor; nor has said William H. Castor purchased said real estate or any part thereof from said Samuel B. Castor since said sheriff's sale.

" 17. Said William H. Castor received his discharge in bankruptcy on the 18th day of March, 1879, and on the 8th day of October, 1879, said Samuel B. Castor, without receiving anything of value whatever for so doing, conveyed one of the forty-acre tracts of land described in the complaint, to wit, the east half of the west half of the northeast quarter of section twenty-three (23), township 19, range five (5), to said William H. Castor, who now holds the title so conveyed to him.

" 18. At the date of the sheriff's sale and continuously since then, said William H. Castor had not sufficient property subject to execution, excluding that described in the complaint, to pay his debts.

" 19. Said defendant Samuel B. Castor purchased said Suman judgment for the purpose of preventing the holder thereof from redeeming from said sheriff's sale, and made the purchase from the assignee in bankruptcy to prevent other persons from becoming the owners of the real estate.

" 20. On the 23d day of September, 1879, said Samuel B. Castor procured a sheriff's deed for the lands described in the complaint to be made to him by the successor of the sheriff who had issued the sheriff's certificate, said deed purporting to be made in pursuance of the terms of said certificate.

" 21. At the time of going into bankruptcy, the debts owing by said William H. Castor, other than those secured by the mortgage of August 26th, 1876, and those represented by the judgments hereinbefore found to have existed as judgment liens, amounted to less than five hundred dollars, and he had no property of any value except the real estate de-

scribed in the complaint and in the mortgage of August 26th, 1876. And in the schedule annexed to his petition to be adjudged a bankrupt, he exaggerated the amount of liens existing against his real estate to the extent of eight thousand seven hundred and twenty-five dollars. He also failed to state or show anything about his having executed the mortgage of August 26th, 1876, or that it existed as a lien upon his lands, but in his said schedules he included and mentioned the debts secured by said mortgage as judgment liens."

Upon these facts so found the court below rendered judgment in favor of appellees. Appellants ask a reversal of the judgment upon the following grounds :

"*First.* There was no valid sheriff's sale.

"*Second.* The purchaser at the sheriff's sale, if it was a valid sale, acquired no interest in the lands that was not subject to the other judgments, and the sale did not destroy or impair the equality of the liens.

"*Third.* Any lien or estate acquired by virtue of the sheriff's sale was merged in the title acquired by the subsequent purchase from the assignee in bankruptcy.

"*Fourth.* No equitable reason for preventing the merger and keeping the encumbrance alive after the purchase from the assignee in bankruptcy exists.

"*Fifth.* The contract of purchase from the assignee stipulating that he took the land subject to all encumbrances bound the land in Samuel B. Castor's hands for the payment of the encumbrances.

"*Sixth.* Samuel B. Castor was not an actual *bona fide* purchaser of the sheriff's title for himself, but procured it to be held in trust for his brother William H. Castor, and procured it to assist the latter in carrying out his intention to hinder, delay and defraud his creditors."

As to the sheriff's sale, the argument is that the special findings show that there was no memorandum made at the time ; that the money was not paid at the time ; that the sale was for an inadequate amount, and that for these reasons the sale was absolutely void. The findings show, however, that at

the time of the sale the sheriff wrote out and signed a certificate of sale to the purchaser, Bonebrake.    It should be presumed that this certificate contains all that the statute requires. 2 R. S. 1876, p. 220; R. S. 1881, section 766.  Such a certificate, it has been held, is sufficient to take the sale out of the statute of frauds.  Rorer Jud. Sales, section 744; *Armstrong v. Vroman,* 11 Minn. 220; Freeman Executions, section 299, and cases cited.  But if it was not, the sale here, under the facts found, was not void, but voidable only; and while the purchaser could not have enforced a compliance on the part of the sheriff, and he on the other hand could not have enforced the payment of the amount bid, yet there was a moral obligation on the part of both to comply with the terms of the sale; and when the parties, recognizing this moral obligation, completed the sale by the payment of the money and the delivery of the certificate, and no new rights of third parties having intervened, the sale became a valid sale, so far as it might have been affected by the statute of frauds.  *Hadden* v. *Johnson,* 7 Ind. 394; *Fowler* v. *Burget,* 16 Ind. 341; *Wills* v. *Ross,* 77 Ind. 1 (40 Am. R. 279); *Cool* v. *Peters Box, etc., Co.,* 87 Ind. 531; *Owens* v. *Lewis,* 46. Ind. 488, 518 (15 Am. R. 295).

This is not a case of the sheriff selling on credit; nor was the certificate delivered before the money was paid.  Nor is it a case where either the sheriff or purchaser is seeking to enforce the sale.  The sale, as we have seen, was consummated. There was a delay in the payment of the purchase-money, but it does not appear to have been by agreement on the part of any one.

We can not hold that there was such an inadequacy in the amount for which the lands were sold as would justify a holding that the sale is void.  In a direct proceeding for that purpose, inadequacy of price, with other circumstances, may be such as to justify a court in setting aside a sheriff's sale of land.  But even in such a proceeding the rulings seem

to be that inadequacy of price alone will not warrant the setting aside of a sale.   Freeman Executions, section 309; *Dawson* v. *Jackson,* 62 Ind. 171; *Sowle* v. *Champion,* 16 Ind. 165; *Bertenshaw* v. *Moffitt,* 6 Ind. 464; *Benton* v. *Shreeve,* 4 Ind. 66; *Roe* v. *Ross,* 2 Ind. 99; Herman Executions 411, section 252.

This doctrine is the more reasonable in States which, like this, have laws allowing redemption from sheriff's sales. Where a party may redeem from such sales, he is not in a very favorable condition to complain that the amount necessary to a redemption is small.   It should be remembered here, too, that this is not a direct proceeding to set aside the sale.   The case is prosecuted upon the theory that the sale is absolutely void, and may be so treated in a collateral proceeding.   The rule to be applied in such cases is not the same.   As said in the case of *Davis* v. *Campbell,* 12 Ind. 192, a sale will be set aside as erroneous in a direct proceeding for that purpose, when it would not be held void in a collateral suit. See, also, *Jones* v. *Kokomo Building Ass'n,* 77 Ind. 340, 344. It should be remembered too, that while the lands sold for $1,125 were worth $8,780 they were subject to judgments of equal date with appellants', in the sum of about $13,000, and the judgment over in the foreclosure proceedings of $6,233.29. It is true that the land covered by the mortgage was worth $9,725, but that did not prevent the judgment over being a lien upon the lands in controversy here.   In the event of the mortgaged land not selling for enough to satisfy the decree, the owner of that judgment would have had the right to look to the lands described in the complaint for the balance, subject, of course, to the older judgments.

After the sale, the judgment in favor of the Lebanon bank was satisfied by some one; the Essinger judgment was in a way satisfied, and the Suman judgment purchased by Samuel B. Castor, but they were all liens at the time of the sale, and we know of no reason why the Suman judgment did not continue to be a lien.   But if the bank and Essinger judgments

were deducted, the liens aside from the judgment over would still be over $7,000, almost as much as the value of the lands sold. Any of these judgment plaintiffs, as we shall see hereafter, might have redeemed from the sale on the Essinger judgment. When all these facts are considered, it can not be said that the amount for which the lands were sold was so inadequate as to render the sale void. *Kerr* v. *Haverstick,* 94 Ind. 178.

There was no secrecy about the sale, nor was there any combination by which the selling price was kept down. For aught that appears, appellants and others might have attended the sale and competed as bidders. Why Bonebrake bid off the lands, and agreed that Samuel B. Castor · should pay the amount and become the assignee of the certificate, is not shown; but this is hardly a circumstance to throw suspicion upon the sale. Samuel B. Castor was a judgment creditor, and had a right to protect his judgment, and he had the right that any other person might have exercised to buy the lands with the hope of profit. And after the purchase he had a right to protect the sale against redemption by purchasing the judgments of others, who threatened or contemplated a redemption. He also had the undoubted right to purchase the judgments at the lowest figures that the parties might agree upon. That he purchased them for less than their face was a matter between him and those from whom he purchased; it is surely not a matter about which appellants may complain. They might have done the same thing. He seems to have paid his own money. So far as shown, Wm. H. Castor did not furnish a dollar.

There are other circumstances that appellants claim are connected with the sale, which we shall notice further along.

At the time the judgments were taken, except that in the foreclosure proceedings, Wm. H. Castor was not the owner of the lands described in the complaint. When he became the owner of them by the death of his wife, the judgment liens all attached at the same instant, and became equal liens.

This is conceded, and is well settled by authority. The execution upon the Essington judgment was the first and only execution issued and levied, and upon that the lands were sold. The contention of appellants is, that conceding the sale to have been valid, yet it did not destroy the equality of the liens of the several judgments; that hence the purchaser took the lands subject to those liens, and that, therefore, the lands may be re-sold upon those judgments without redemption from the sale and without regard to it. In the maintenance of this contention, they have found it necessary to assail the case of *Michaels* v. *Boyd*, 1 Ind. 259. In that case, as in this, the judgment defendant owned no real estate at the time the judgments were rendered. It was held that the several judgments attached and became liens at the same instant upon the after-acquired real estate, and hence liens in all things equal. One of the judgment plaintiffs had an execution issued upon his judgment, upon which the real estate was sold. The contest was between him and other judgment plaintiffs, as to who was entitled to the fund in the hands of the sheriff. It was decided that he whose execution was first issued and levied was entitled to it. In support of the holding, the cases of *Adams* v. *Dyer*, 8 Johns. 347, *Waterman* v. *Haskin*, 11 Johns. 228, and *Burney* v. *Boyett*, 1 How. (Miss.) 39, were cited.

The decision, in effect, is a holding that the prior levy gave priority to the judgment upon which it was issued. In stating the question, preliminary to a decision in the affirmative, Judge BLACKFORD said: "The first question presented is, was the judgment of the plaintiffs entitled to priority as to the date of the lien?" This decision has never been questioned by this court, but on the contrary approved and followed. In the case of *Lowry* v. *Reed*, 89 Ind. 442, a question was made as to the superiority of title. A party had become replevin bail on two judgments on the same day. As to his real estate, the liens of the two judgments were thus equal. One of the judgment creditors had an execution issued upon his judgment, upon which the land of the replevin

bail was sold. Afterwards, another judgment creditor had an execution issued upon his judgment, and the land was again sold. The court, after citing with approbation the case of *Michaels* v. *Boyd, supra,* said : " In the case at bar the judgments against the replevin bail became liens on his property on the same day ; neither had any priority over the other. * * * The appellee, by his superior diligence in issuing and levying his execution, secured the preference." Although not in explicit terms reasserted, the same doctrine was recognized in the case of *State, ex rel.,* v. *Cisney,* 95 Ind. 265.

We are cited to the case of *Rockhill* v. *Hanna,* 4 McLean, 554, in which the U. S. Circuit Court for the district of Indiana declined to follow the case of *Michaels* v. *Boyd, supra,* and the cases therein cited. Of that case it is sufficient to say that it went to the Supreme Court of the United States upon a certificate of division in opinion between the judges below and was there reversed. In the opinion, the case of *Michaels* v. *Boyd, supra,* and the cases therein cited, were cited and approved, and their doctrine reasserted. *Rockhill* v. *Hanna,* 15 How. (U. S.) 189.

The same doctrine has been held in many other cases. In the case of *Smith* v. *Lind,* 29 Ill. 24, the court said : " While the lien was made equal, diligence was left to its reward. Under the general law, the lien of judgments is equal, but the vigilant creditor can acquire a preference in the payment of his judgment, although it has but an equal lien, by first issuing his execution. If one creditor, who is precisely equal to another in point of lien, shall get an advantage by the use of superior diligence in discovering property, making a levy and sale of it, where is the hardship or injustice ? If the property is sold below its value, the right of redemption and re-sale remains to the other judgment creditors." This case also cites and approves the case of *Michaels* v. *Boyd, supra.*

The same doctrine is held in Mississippi. *Burney* v. *Boyett, supra.* And so in Missouri. In the case of *Bruce* v. *Vogel,* 38 Mo. 100, it was said : " If one creditor who is exactly

equal to another as regards liens, by energy, perseverance and diligence, discovers property whereon to levy and make his money, justice demands that he shall reap the fruits of his industry. * * * We are well satisfied, on principle, that where judgment liens are equal, one judgment creditor can get priority over another by his superior vigilance and watchfulness."

The Alabama court is in accord with the above cases. *Bliss* v. *Watkins*, 16 Ala. 229. And so is the Iowa court. *Cook* v. *Dillon*, 9 Iowa, 407.

In the case of *Lippencott* v. *Wilson*, 40 Iowa, 425, the facts were as follows: Two parties recovered judgments against a third party on the same day. One of the judgment creditors, Ellison, had an execution issued upon his judgment, and levied upon the land of the judgment defendant. The land was sold upon the execution and purchased by the judgment creditor upon whose judgment the execution was issued. The other judgment creditor brought an action to have the land subjected to the payment of his judgment. The court said: "It has also been held that, ' as between judgment creditors whose liens are of the same date, he who first takes the property in execution has the preference to be first paid out of its proceeds.' * * * It is not possible to accept these propositions, and to accede to them their logical consequences, and at the same time to deny to the Ellisons the prior and better right to the property in controversy, under the facts stipulated and admitted in argument." This case, it will be observed, decides the exact question involved here, and against appellants' contention.

Mr. Freeman, in his work on Judgments, at section 374, says: "If two or more judgments, on account of their contemporaneous rendition or docketing, or from any other cause, are equally entitled to precedence as liens on the real estate of the judgment debtor, this equality may be destroyed, in order to give precedence to the lien-holder who first attempts to subject any specific real estate to the payment of his

lien. 'The law favors diligent creditors;' and the courts seem to be unanimous, where liens are otherwise equal, in according to him who first takes property in execution, the right to be first satisfied out of its proceeds." See, also, Freeman Executions, section 203.

Rorer in his work on Judicial Sales, section 703, says : " If several judgment creditors have judgments of equal date, and their judgments are in law all liens on the real estate of the same defendant, the one that levies thereon first obtains priority."

The result of all these authorities, and the direct holding of some of them, is that where there are different judgments, which are equally liens upon the lands of the judgment debtor, the judgment creditor who first has issued and levied an execution thereby obtains a lien which is superior to that of the other judgments upon which executions have been subsequently issued, or upon which no executions have been issued. The result of this is that the first execution so far subordinates the lien of the other judgments, that the owners of them may redeem from the sale upon the first execution, under the statute which provides that junior judgment creditors may redeem.

It would be illogical to hold that by such an execution the judgment creditor acquires a priority, to be paid out of the proceeds of the sale, but that the purchaser who pays the money gets nothing that he can hold as against the other judgments. In this case, the liens at the time of the sale far exceeded the value of the lands. According to the theory of appellants, a purchaser at a sheriff's sale could not get a valid title unless he should bid and pay enough to discharge all of the liens; for if he should bid and pay less, each of the other judgment creditors might disregard the sale, treat it as void, and re-sell the land ; and thus the re-sales might continue until each judgment creditor should be paid full, each time the purchaser losing what he paid, unless, perhaps, executions should be issued upon all of the judgments at the same time.

But if any one judgment creditor should refuse to have an execution issued upon his judgment, then the same difficulty would arise, and the land could not be sold so as to carry a valid and sure title.

Judgments are liens upon the real estate of the judgment debtor because the statute makes them such. This lien is given for the purpose of collection. Mr. Freeman says, "'A judgment is not a specific lien on any particular real estate of the judgment debtor, but a general lien upon all his real estate, subject to all prior liens, either legal or equitable, irrespective of any knowledge of the judgment creditor as to the existence of such liens.' 'In short, a judgment creditor has no *jus in re*, but a mere power to make his general lien effectual, by following up the steps of the law, and consummating his judgment by an execution and levy on the land.'" Section 338. And so it was said in the case of *Gimbel* v. *Stolte*, 59 Ind. 446, 451, distinguishing a mortgage and judgment lien: "There can be no doubt that a law, which gives a judgment creditor a lien on the real estate of the debtor, relates solely to the remedy."

When the liens are thus equal, and one of the judgment creditors first pursues the remedy and exercises the power of making his lien effectual by following up the steps of the law by an execution and levy, he thereby makes his consummated lien superior, which until then was but equal.

This does not conflict with the rulings that a judgment lien which is superior by seniority can not be overthrown by a junior judgment lien. There the preference is completed by the seniority. Here there is no seniority, and the preference is brought about by the superior diligence in following up the steps of the law, and, in a sense, appropriating the property by the levy of an execution.

Upon the theory that the levy of an execution fixes and strengthens the judgment lien rests the decision of this and other courts holding that a judgment lien may be enforced by a sale of the property upon which it is a lien, after the bank-

ruptcy of the judgment debtor, if the execution has been levied before such bankruptcy; and that a judgment lien, without an execution and such levy, may not be thus enforced after the bankruptcy of the judgment debtor.  *O'Harra* v. *Stone,* 48 Ind. 417; *Blair* v. *Hanna,* 87 Ind. 298.

In the case before us, the execution upon which the sale was made had been levied before the bankruptcy of Wm. H. Castor; therefore his bankruptcy did not affect the sale, nor in any way affect the title through that sale.    Before the expiration of the year for redemption had expired, the assignee in bankruptcy, upon the suggestion of appellee Samuel B. Castor, procured an order from the bankrupt court for the sale of the bankrupt's real estate, subject to the liens thereon.  The sale was thus made to Samuel B. Castor for seventy-five dollars.  At the expiration of the year for redemption, said Castor procured a sheriff's deed for the real estate.   It is said in argument that the sheriff's deed conveyed nothing, because at that time all the title and rights that the owner, Wm. H. Castor, had in the real estate, had passed from him by the bankruptcy proceedings.   A sufficient answer to this is that the title carried by a sheriff's deed is not the title that the judgment debtor may have at the time the sheriff's deed is made, but the title he had when the judgment became a lien, and at the time of the sale.   *Doe* v. *Horn,* 1 Ind. 363; *Smith* v. *Allen,* 1 Blackf. 22;  *Gale* v. *Parks,* 58 Ind. 117; *Wilhelm* v. *Humphries,* 97 Ind. 520; *Elliott* v. *Cale,* 80 Ind. 285; *Riley* v. *Davis,* 83 Ind. 1.

Suppose, that instead of going into bankruptcy, Wm. H. Castor had himself sold his interest in the lands, after they had been sold by the sheriff, could it be said that because he had no title or interest in the lands when the sheriff's deed was made, that deed conveyed no title?   Clearly not.   It can make no difference whether he made such a sale, or was divested of title to and interest in the lands by the bankruptcy proceedings.  It is contended by appellants, and conceded by appellees, that as the lands were sold by the assignee subject

to the liens thereon, appellants' judgment lien was not destroyed by the bankruptcy proceedings. It is not contended that the purchase from the assignee bound Samuel B. Castor, the purchaser, to pay off the liens, but only that the sale did not divest those liens; that he took and held the lands subject to the judgment liens, and that, therefore, they may be enforced against the lands notwithstanding the sheriff's sale and deed. And to make good their theory in this regard appellants argue that the sheriff's certificate held by Samuel B. Castor did not convey a legal title, but only a lien or equitable title, and that as he acquired title from the assignee before getting a sheriff's deed, that title was the superior title, and merged and swallowed up whatever title or interest was carried by the certificate. It is settled that the sheriff's certificate does not convey a legal title to the purchaser. *Hasselman* v. *Lowe,* 70 Ind. 414.

By the bankruptcy all of the right and title of the bankrupt passed to his assignee, and this was the right to redeem from the sheriff's sale. The assignee took the lands subject to the rights of Samuel B. Castor, the purchaser at the sheriff's sale. He might have redeemed from that sale and made the lands assets for the payment of the bankrupt's debts, or he might have sold the lands subject to the sale and the liens upon them. The latter he did. Had he sold to any person other than Samuel B. Castor, the purchaser would have become the owner of the equity of redemption, and might have redeemed from the sheriff's sale. It can not be said, we think, that, by the purchase from the assignee, Castor redeemed the land from the sheriff's sale. Does it follow, then, that because he was the purchaser at the sheriff's sale and the purchaser from the assignee, the title derived from the assignee swallowed up and destroyed all of his rights under the sheriff's sale, so that he could not at the end of the year for redemption take a sheriff's deed, and complete his title through the sheriff's sale?

It is a general rule at law that when two titles meet in the

same person, the greater will merge and destroy the lesser, but this is not the general rule in equity.

In the case of *Howe* v. *Woodruff,* 12 Ind. 214, it was said: " But, notwithstanding this technical rule of law, it is well settled that a court of equity will keep an encumbrance alive, or consider it extinguished, as will best subserve the purposes of justice and the actual and just intention of the party." See, also, *Haggerty* v. *Byrne,* 75 Ind. 499; *Smith* v. *Ostermeyer,* 68 Ind. 432; *Gatling* v. *Dunn,* 52 Ind. 498.

Mr. Pomeroy, in his work on Equity Jurisprudence, at section 788, says : " If the intention has not been thus expressed, it will be sought for and ascertained in all the circumstances of the transaction. If it appears from all these circumstances to be for the benefit of the party acquiring both interests, that a merger shall not take place, but that the equitable or lesser estate shall be kept alive, then his intention that such a result should follow will be presumed, and equity will carry it into execution by preventing a merger. * * * If from all the circumstances a merger would be disadvantageous to the party, then his intention that it should not result will be presumed."

And again, at section 791 : " If there is no reason for keeping it " (the lien) " alive, then equity will, in the absence of any declaration of his intention, destroy it; but if there is any reason for keeping it alive, such as the existence of another incumbrance, equity will not destroy it." See, also, section 793.

There can be no doubt, we think, as to the intention of Samuel B. Castor in purchasing the land at the sheriff's sale. He had a lien upon it by the judgment over in the foreclosure proceedings. He had a right to protect that lien by a purchase of the land. He also, as we have said, had a right to purchase the land as an investment. After he purchased it, it was to his interest to protect the purchase. It is said in some of the special findings, that after the purchase at the sheriff's sale, he purchased one of the other judgments to prevent a redemption. This he undoubtedly had a right to do,

and it shows that his intention was to protect his interest acquired through the sheriff's sale.

It is found further that he made the purchase from the assignee in bankruptcy to prevent other persons from becoming the owners of the real estate. This, if it shows anything, shows that he was still seeking to protect his interest in the land by the sheriff's sale; and the fact that when the year of redemption expired he procured a sheriff's deed, shows that he intended to preserve the sheriff's sale, and acquire title through it. It is evident that he did not rely for the better title upon the purchase from the assignee. To have relied upon that, and abandon the purchase from the sheriff, would have been to abandon all idea of making the judgment over in the foreclosure proceeding more secure, and to have lost all that he paid to the sheriff, because, having purchased from the assignee subject to all liens, in the absence of title through the sheriff's sale, he would have been compelled to pay the liens or lose the land and all that he had paid out.

Upon all these considerations, we think that it is but applying the reasonable rules of equity to hold that the purchase from the assignee did not destroy the rights acquired by the sheriff's sale, and that Castor, the purchaser at that sale, had a right to a sheriff's deed, and that the deed conveyed a title antedating the title acquired from the assignee. This is so, unless there is some reason not yet noticed why it should not be so.

It is said by Mr. Pomeroy, at section 794 of his work, *supra,* that equity will not prevent a merger when it will aid in carrying a fraud or other unconscientious wrong into effect, and that equity only interposes to prevent a merger, in order thereby to work substantial justice.

Appellants seek an application of this doctrine to this case, and insist that the special findings show that Samuel B. Castor was in collusion with his bankrupt brother to defraud the other creditors, and they cite the manner of the sheriff's sale, the purchase of one of the other judgments, the fact that the

bankrupt brother has been allowed to remain upon the lands, receiving the rents and making improvements, the fact that Samuel B. has conveyed to him one forty-acre tract of the land, and the fact that in his schedules in bankruptcy Wm. H. Castor exaggerated the amount of the liens upon his real estate. The court below found these facts, but failed to find the ultimate fact, that in all this there was any collusion between the brothers, or that there was any fraud, or intent to defraud any one. If appellants were satisfied that the several facts mentioned were badges of fraud, and that fraud in fact should have been found, their proper course was by motion for a new trial. Fraud in such cases is a question of fact, and hence we can not determine it here as a matter of law from the facts here found. *Louthain* v. *Miller*, 85 Ind. 161. Nor is there anything found from which we can say as a matter of law, that the lands are held in trust for Wm. H. Castor. There is no evidence of any agreement of that kind. Wm. H. Castor is not shown to have furnished any money in the purchase of the lands. The only circumstance in the case looking that way is the fact that Samuel B. Castor has conveyed to his bankrupt brother forty acres of land, the value of which is not shown, and has left him upon the lands to repair his fortune, instead of going West. Samuel B., as matters have turned out, has undoubtedly realized handsomely upon his investment, and appellants have realized nothing, but that has been entirely their own fault, in failing to look after their interests at a proper time and in a proper manner. They might have attended the sheriff's sale and been competing bidders; they might have redeemed from that sale; they might have been competing bidders at the assignee's sale, and through the assignee they might have brought to the knowledge of the bankrupt court the fact that in the bankrupt's schedule he exaggerated the amount of the liens upon his land, and thus have prevented the assignee's sale, or had it set aside after it was made. All of this they neglected to do. Whatever of fraud or unfair dealing there may have

been in the bankruptcy proceeding was a matter to have been dealt with by the assignee in bankruptcy and the bankrupt court. *Blair* v. *Hanna,* 87 Ind. 298.

It is too late now to attack and overthrow the title of Samuel B. Castor in the manner here attempted. The judgment. must, therefore, be affirmed, with costs.

Filed April 2, 1885; petition for a rehearing withdrawn May 12, 1885.