Myers *et al. v.* O'Neal *et al.*

No. 15,668.

## MYERS. ET AL. *v.* O'NEAL ET AL.

JUDICIAL SALE.—*Liens on Land Sold.—Assumption of.*—In the absence of an assumption of, or agreement to pay, existing liens, land sold at a judicial sale remains the primary fund for the payment of the encumbrances thereon, to the extent of its value and in the order of their seniority.

SAME.—*Purchaser not Liable for Liens on Land Purchased.*—A purchaser at a judicial sale is not, by the mere fact of his purchase, liable to pay the debts secured by liens on the land purchased.

SAME.—*Purchaser Buying in Liens and Causing Sale Thereon.—Title as Against Junior Lien-Holder.*—A purchaser of land at a judicial sale may cause said land to be sold on a prior lien that he has acquired, and obtain a valid title to said land by purchase at such sale as against a junior lien-holder.

From the Daviess Circuit Court.

*A. J. Padgett, A. Paget, W. R. Gardiner, S. H. Taylor,* and *C. G. Gardiner,* for appellants.

*J. H. O'Neal,* for appellees.

MILLER, J.—This was an action brought by the appellants against the appellees. The first paragraph is in ejectment for the whole of the tract of real estate in controversy. The second claims that the plaintiffs own the undivided two-thirds and the defendants the one-third, but that defendants wrongfully claim the whole title, and asks that the title of the plaintiffs to the two-thirds be quieted. The third paragraph is for the partition of the land.

The defendants answered the complaint by a general denial. A trial was had by the court, and a special finding of facts made upon request, and upon the special finding of facts the court stated its conclusions of law, and found for the defendants upon each paragraph of complaint. To these findings appellants excepted, and brought this appeal, assigning as error that the court erred in its conclusion of law upon the facts found.

The facts found by the court that we deem necessary to

present the question of law that must control the decision of this case are as follows:

In the year 1869 one Bott became the owner, by a single conveyance, of two parcels of real estate. Part of the purchase-money was paid, and a note and mortgage executed on all the property for the residue.

Subsequently Bott became financially embarrassed, and his property covered by mortgages and judgments, and he was, eventually, adjudged a bankrupt.

The parties to this action each claim title to one of these parcels of real estate growing out of certain judicial sales.

The appellee John H. O'Neal, from time to time, became the accommodation surety of Bott for a considerable amount, and was in part indemnified by a mortgage on both parcels of land.

On the 24th day of November, 1877, the property was sold by the assignee of Bott to the appellee John H. O'Neal, for the sum of twenty dollars, " subject to all liens and encumbrances upon and against said lots."

At that time the lots were worth in the aggregate not to exceed the sum of $7,600, which, if we deduct the one-third interest of the wife of Bott, which vested at the sale, left the net value of the property $5,067.

The property was encumbered, counting interest to November 24, 1877, and not including costs, in the sum of $16,716.38. This encumbrance may conveniently be classified as follows:

| | |
|---|---:|
| Total liens senior to appellants' judgments . . . | $10,841 74 |
| Appellants' judgments . . . . . . . . . . . | 353 10 |
| Judgments junior to appellants' . . . . . . . | 5,521 54 |
| Total . . . . . . . . . . . . . . . . . . | $16,716 38 |

After purchasing the property at the sale by the assignee in bankruptcy, O'Neal proceeded in a diligent way to control all liens older than a mortgage resting upon one of the parcels of real estate, the collection of which was necessary

to protect his interests. Having purchased and taken assignments of certain of the senior judgments, he caused executions to issue, and became the purchaser of the property at sheriff's sales, and subsequently acquired sheriff's deeds on these purchases.

After O'Neal acquired title, the wife of Bott instituted an action in partition against him for the recovery of her one-third interest, which resulted in a decree in her favor, and a sale of the property, by a commissioner in partition, to one Donaldson, who subsequently assigned the certificate of purchase to O'Neal, who in due time received a commissioner's deed.

The appellees, other than John H. O'Neal, hold by conveyances from him.

On the 12th day of August, 1878, the appellants caused executions to issue on their judgments, and on the 14th day of September, 1878, they purchased the property in dispute at sheriff's sale for $422.95, and on September 15th, 1879, they procured a sheriff's deed for the property.

The appellee had his deeds recorded in due time, but the appellants neglected to have their sheriff's deed recorded until April 1st, 1889, more than ten years after their purchase.

The appellants claim that by the sale made by the assignee in bankruptcy the legal title vested in the purchaser subject to, and charged with, the payment of the liens and encumbrances thereon; that O'Neal, having purchased the property at judicial sale, subject to encumbrances, is presumed to have deducted the amount of all prior encumbrances from the purchase-price; and that, when he purchased and took assignments of the senior liens, he simply paid part of the purchase-money; that the title acquired under the sheriff's sale became merged in the fee simple which he then held.

The appellants further claim that as a result of this the appellants under their purchase at sheriff's sale acquired title

to the undivided two-thirds of the property, freed from all prior claims of ownership on the part of the appellees.

In support of this proposition the cases of *Bunch.* v. *Grave*, 111 Ind. 351, *Montgomery* v. *Vickery*, 110 Ind. 211, *Hancock* v. *Fleming*, 103 Ind. 533, *Birke* v. *Abbott*, 103 Ind. 1, *Atherton* v. *Toney*, 43 Ind. 211, and *Shuler* v. *Hardin*, 25 Ind. 386, are cited and relied upon.

Some of the language employed in the opinions in these cases fully sustains the contention of the appellants. Without stopping to inquire whether the language used in some of these cases may not have been broader than was necessary in disposing of the cases then before the court, and broader than can be sustained by the weight of decided cases, we are of the opinion that, in any event, they are not decisive of the case now in hand.

While it may be the general rule that the amount bid for property at execution sale will be presumed to be the price or value of the property, less the amount of the encumbrances, the presumption is not conclusive or without exceptions. For instance, in the case under consideration, where the amount of the encumbrance is more than three times the value of the encumbered property, the presumption would be a violent one. *McClain* v. *Weise*, 22 Ill. App. 272. If the law was as it is claimed by the appellants to be, no one would purchase the equity of redemption in lands covered with liens exceeding the value of the property.

We are of the opinion that, in such case, in the absence of an assumption of, or agreement to pay, existing liens, the land will remain the primary fund for the payment of the encumbrances to the extent of its value, and in the order of their seniority.

The purchaser of the equity of redemption differs from an original encumbrancer in this, that he is under no personal obligation to pay the debts secured by the liens, because they are not his debts. Lien-holders have no standing

to ask him to place them in a better position than they occupied before his purchase.

Where the amount of encumbrance considerably exceeds the value of the property purchased, the purchaser can not perfect his title and relieve it of encumbrances, by their payment, without paying more than the property is worth, and thus paying encumbrances that were, prior to his purchase, practically worthless. This the law ought not to compel him to do, as it would be inequitable and contrary to public policy, and would tend to impair the sale on execution of the equity of redemption of encumbered estates.

We see no reason why a purchaser of the equity of redemption in such case may not, as against the holder of junior encumbrances, protect and perfect his title by acquiring outstanding encumbrances, and causing sales to be made thereunder, just as a stranger might do, this being the most practical method of perfecting the title without placing the junior encumbrances in any worse position than they occupied before the sale.

If the facts in any particular case rebut the presumption that the pre-existing encumbrances entered into and formed a part of the consideration of the purchase, then the purchaser is under no obligation, legal or equitable, to the holders of the encumbrances to pay them.

In this case the special findings show that the appellee John H. O'Neal had, prior to the time of his purchase of the property at the sale by the assignee in bankruptcy, interests in the premises in controversy which impelled him to protect the property from being wasted in costs and sacrificed at sheriff's sales, and to either acquire the complete title to the property, or make it bring enough to protect his indemnifying mortgage. The fact that he took an assignment of the judgments, instead of having them satisfied of record, is some evidence of an intention to keep them alive.

There can be no doubt but that it was to his interest to keep them alive, or procure sales and sheriff's deed, in order

to prevent the appellants or other judgment creditors from acquiring title under their junior liens. All these circumstances conspired to prevent a merger of the title acquired under his sheriff's deed, with that conveyed to him by the assignee in bankruptcy.

A succinct statement of the law on this subject is contained in 2 Pom. Eq. Jur., and is as follows :

" Section 798. *Owner who is not liable for the debt pays off the mortgage.* On the other hand, when an owner of the premises who is not personally and primarily liable to pay the debt secured pays off a mortgage or other charge upon it, he *may* keep the lien alive as a security for himself against other encumbrances or titles, and thus prevent a merger. Whether he does so is a question of intention governed by the rules laid down in the previous paragraphs. When it is evidently for his benefit, the intention will be presumed. He may thus be entitled to preserve the lien, even without a formal assignment of the security to himself. Among those who are thus regarded as equitable assignees are grantees of the mortgagor not having assumed payment of the mortgage, heirs, devisees, and in fact all parties entitled to redeem, and not personally liable as principal debtors."

To the same effect may be cited *Hanlon* v. *Doherty,* 109 Ind. 37 ; 1 Jones Mort., Chap. 20, part 1, section 848 to 873.

This case affords a strong illustration of the rule that equity will not permit titles to merge where it would be inequitable to do so. The appellants, whose claims, because of the prior encumbrance resting upon the property, were practically worthless, are in no condition to ask that the doctrine of merger shall be applied in order to work a practical confiscation of the superior property rights of the appellees.

The conclusion we have arrived at renders it unnecessary to inquire whether the title acquired by the appellee O'Neal

The Cincinnati, Indianapolis, St. Louis and Chicago R'y Co. v. Darling.

at the sheriff's sale merged in the title conveyed to him by the assignee, or the title acquired under the assignee's sale merged in the title received at sheriff's sale, which becomes, by relation back to the dates of the judgments, the superior title. *Shanklin* v. *Franklin Life Ins. Co.*, 77 Ind. 268; *Smith* v. *Allen*, 1 Blackf. 22; *Doe* v. *Horn*, 1 Ind. 363; *Bellows* v. *McGinnis*, 17 Ind. 64; *Ashley* v. *Eberts*, 22 Ind. 55.

Judgment affirmed.

Filed Feb. 25, 1892.