## Longlois v. Coffin.

The treaty entered into between the *United States* and the *Miami* nation of *Indians* in 1837, contained a clause to the effect that certain land should be granted to the persons therein named by patent from the president of the *United States*. *Held*, that this clause amounted to only a contract that the land should afterwards be properly located by an agent of the government and be conveyed by patent.

ERROR to the *Howard* Circuit Court.

Blackford, J.—This was a bill in chancery, filed by *Longlois*. The object of his suit was to establish a title to a certain half section of land claimed by him, and for a decree restraining the defendant from committing trespass on the land. The cause was submitted to the Circuit Court on bill, answer, and replication, and a statement of facts. The bill was dismissed.

The material facts are as follow: In 1837, a treaty,

entered into between the *United States* and the *Miami* na-
tion of *Indians*, was duly ratified.   By the first article of
that treaty, the said *Miami* nation ceded to the *United*
*States* various large tracts of land situate in this state.
The third article of the treaty is in these words: " From
the cession made in the first article of this treaty, there
shall be granted to each of the persons named in the
schedule hereunto annexed, and to their heirs and assigns,
by patent from the president of the *United States*, the
lands therein named."

The schedule referred to in that article contains the fol-
lowing entry:  " To *Peter Longlois* one-half section of
land, to be located at a point on *Wild Cat*, where the old
trace from *Mississineway* to *Thorntown* crosses the same."

The lands ceded to the *United States* by this treaty were
afterwards surveyed by an agent of the *United States*, and
the *west* half of section three, township twenty-three north,
range two east, was located by him for said *Longlois*, un-
der the provisions of said treaty.

Afterwards, the president of the *United States* issued
and forwarded to said *Longlois* a patent for the land thus
located; but the patent was immediately returned to the
president by *Longlois*, on the ground that it was not for
the right land.

The old trace, referred to in the treaty, crossed *Wild
Cat* creek very near the center of the *east* half of said
section numbered three.

After the location of the *west* half of said section for
*Longlois*, the *United States* granted the *east* half of that
section to the state of *Indiana*, and the state afterwards
sold the same to the defendant.

The land now in dispute between the parties to this
suit, is the said *east* half of section numbered three.

The complainant's claim is founded on the treaty alone.
He contends that, by the said third article of the treaty,
and the said schedule, the title to the land in question
was absolutely vested in him.  If this proposition be cor-
rect, the complainant could, immediately after the ratifi-
cation of the treaty, have taken possession of the land

so granted to him. But it is certain that he could not have thus taken possession; and there are two reasons why he could not. First, the boundaries of the tract are not designated by the treaty; secondly, the treaty provides the mode by which the grant was to be made, viz., by a patent from the president of the *United States*, and the maxim *expressio unius alterius est exclusio* applies.

Our opinion is, that before the complainant could claim any tract of land under the treaty, the tract must have been located under the authority of the *United States*, and a patent to him for the same must have been issued by the president. There being no such location and patent, there is no ground for the present suit.

The principal case relied on by the complainant to sustain the proposition, that the treaty itself is a grant to him of the land in dispute, is *Doe* on the demise of *Godfrey* v. *Beardsley*, 2 McLean's R. 412. That case arose under an *Indian* treaty entered into at *Chicago* in 1821, which ceded certain lands to the *United States*. That treaty contained the following clause: "There shall be granted by the *United States* to each of the following persons, being all *Indians*, by descent, and to their heirs, the following tracts of land." There then followed this clause: "To *Pierre Moran*, or *Peerish*, a *Pottawatamie* chief, one section of land, and to his children two sections, at the mouth of the *Elkhart* river."

The *Chicago* treaty provides further, that the tracts of land therein stipulated to be granted, should be located after the lands ceded had been surveyed, and in conformity with such surveys, as near as might be, and in such manner as the president might direct.

The lands ceded by the last-named treaty were afterwards surveyed, and a certain section of land, within the cession, was located for *Moran* by the *United States* agent under the treaty. That location was approved by the president, and the section designated on the official plat of the township in which the section was situate. The section thus located and designated on the plat, was section 5, in township 27 north, of range 5 east, in the *La*

*Porte* district. *Moran* conveyed, before the location, his interest in the grant to *Godfrey*, and after the location, he conveyed the located section to *Beardsley*. We have examined the papers in said case, and they show the facts to be as we have stated them.

Nov. Term, 1849.

LONGLOIS
v.
COFFIN.

That suit, on the trial, was objected to, on the ground that as no patent had issued for the land, the title to it was still in the *United States*. The Court overruled the objection, saying that the land was granted to *Moran* by the treaty, and that, therefore, no patent was necessary.

The opinion in that case, that no patent was necessary to the transfer of the title, is no doubt correct. The case, however, differs materially from the one now under consideration. In the case cited, the section of land had been regularly located in conformity with the treaty, before the title to any specified tract was claimed by *Moran* or by any one under him, by virtue of the treaty; and the treaty contained no provision that the land should be granted by a patent.

The correct doctrine on the subject we understand to be this: Where a treaty says that the title to a certain tract of land is thereby vested in a certain individual, his heirs, and assigns, the treaty operates as a grant of the land. But where it says, as in the present case, that a half section of land, at a specified point, shall be granted to a certain person, his heirs, and assigns, *by a patent from the president of the United States*, the clause amounts only to a contract that the land shall be afterwards properly located by an agent of the government, and be conveyed by a patent from the president.

It may be that the general government has not done its duty as to the claim of the complainant, but with that we have nothing to do. That government is not a party to this suit; and if it was, we have no power to enforce the performance of its contracts or duties.

*Per Curiam.*—The decree is affirmed with costs.

*E. H. Brackett* and *A. M. Crane*, for the plaintiff.

*W. Wright*, for the defendant.