María Cabán in her own right and as mother with *patria potestas* over her minor children Reyes, Dominga, Herminia, Juana and Carmen Hernández Cabán, Plaintiff-appellants, *v.* Fernando Torregrosa, Defendant-appellant.

No. 3656. Argued November 25, 1925.—Decided May 26, 1926.

*E. Martínez Avilés* for the plaintiff-appellants. *Jaime Sifre, Jr.,* and *Horacio Franceschi* for the defendant-appellant.

Mr. Chief Justice Del Toro delivered the opinion of the court.

María Cabán, in her own right and as mother with *patria potestas* over her minor children Reyes, Dominga, Herminia,

Juana and Carmen Hernández Cabán, sued Fernando Torregrosa for damages because of the death of José Hernández, their husband and father, respectively, caused by an automobile belonging to the defendant. The case went to trial and the court rendered judgment against the defendant for the sum of three thousand dollars and the costs. Both parties appealed, the defendant from the whole judgment and the plaintiffs from the amount of compensation adjudged.

We shall take up first the appeal of the defendant. He assigns that the trial court erred (1) in admitting in evidence certificates of the births of Reyes, Herminia, Juana and Carmen Hernández; (2) in rendering judgment in favor of María Cabán and her children without there being evidence of their status as heirs; (3) in rendering judgment in favor of Dominga Hernández when it was not shown at the trial that such a person existed; (4) in rendering judgment in favor of María Cabán and her children because they were not parties to the action; (5) in fixing as compensation the excessive sum of three thousand dollars; (6) in finding the defendant guilty of negligence.

Four certificates of the records of the births of José Reyes Hernández Cabán, Herminia Hernández Cabán, Carmen Hernández Cabán and Juana Hernández Cabán, as the legitimate children of José Hernández Tosado and María Cabán Hernández, were introduced in evidence. The documents begin as follows: "Municipal Government.—Department of Charity.—Quebradillas, P. R.—I, Dr. Arturo C. Aché, keeper of the civil registry of the municipality of Quebradillas, Porto Rico, hereby certify:" and end as follows: "(Signed) Dr. A. C. Aché, Keeper of the Civil Registry.— (There is a seal reading Civil Registry of Quebradillas, P. R.)."

The defendant objected, alleging that the law provided that the registries shall be kept by the Commissioner of Health and the certificates do not state that Dr. Aché is the Com-

missioner of Health and therefore the only official authorized to issue it. The court admitted the documents over the defendant's objection.

The appellant invokes section 48 of the Law of Evidence and cites 10 Ruling Case Law, page 1104, sec. 308.

In our opinion the appellant's own citations sustain the rule applied by the court below. The certificates bear the seal of the civil registry of Quebradillas and proceed from the Department of Health. They would have been more complete if the words, "Commissioner of Charity," had been added after Dr. Aché's name and before the words, "Keeper of the Civil Registry," but they may be understood. In order that Dr. Aché could be the *keeper of the registry* he had necessarily to be the Commissioner or Director of the Department of Charity according to the law; therefore he was the official who had under his custody the books wherein the original records were and the one who could validly issue the certificates.

Since the approval of Act No. 11 of June 25, 1924, which amended section 31 of the Municipal Law, these certificates may be issued by the Secretary appointed by the Municipal Director of Charity. The certificates in this case were issued before the said amendment took effect.

The first and second assignments of error are without merit. It seems well to add that in addition to the certificates the transcript shows that witness Julián Hernández testified that José Hernández was married to María Cabán and that he had four children living with the widow; that witness Manuel López testified to the same effect, and that the plaintiff testified at the trial that she was married to José Hernández, with whom she had four children named Peyito, Herminia, Carmelita and Juanita; all without opposition by the defendant.

The appellee admits that the third error assigned was committed; that is, that in the record there is no evidence

of the existence of Dominga Hernández and explains that it was due to mistaken information given to the plaintiffs" counsel and neglect to correct it during the trial.

The disagreement arises in fixing the consequences of the error. The appellant contends that it vitiates the whole judgment. The appellee asserts that the judgment may be corrected by this court.

The appellant cites the following in support of his contention:

"The cases are very numerous in which it is declared that a judgment is an entirety. By this is meant that a judgment cannot be bad in part and good in part, but must stand or fall as a whole. This rule applies, however, only where the error is an inseparable part of the judgment." 33 C. J. 1051–52.

And on page 1130 of the same volume of Corpus Juris we find the following:

"By some authorities a judgment against two or more defendants jointly is regarded as an entirety, so that if it is irregular, erroneous, or void as to one of the defendants, it is equally so as to all; but other decisions hold that a judgment may be valid and enforeceable as to one or some of defendants, although voidable or void as to others. Decisions even in the same jurisdiction are often in conflict. Whether or not such judgment may be reversed as to some of the parties and affirmed as to others on appeal or writ of error is discussed elsewhere in this work."

In volume 4, page 1182, on the subject of appeals, it is said:

"There is considerable diversity of holding on the question as to whether an appellate court has power to reverse a judgment as to one or more of several parties. While, under the peculiar circumstances of a few cases, other distinctions have been applied, the general line of distinction is whether the judgment is entire or severable, it being the rule that an entire judgment, jointly binding on several parties, if reversed as to one must be reversed as to all; but that, where the interests of the parties are several and independent, so that a proper decision of the case as to one is not dependent on the judgment as to the others, the judgment may be reversed as to one and affirmed as to the others."

Nearly all of the cases on which these quotations are based refer to defendants. This case is concerned with the plaintiffs. In the complaint it was alleged that five children were left by Hernández. The evidence showed that there were four. In spite of that the judgment erroneously referred to the five. The right of the four did not depend on the right of the fifth, who was in fact an imaginary person. It can not be held that the judgment is an entirety in that sense. After eliminating the plaintiff whose existence was not proved the judgment stands as regards the other plaintiffs. It is a mere error that can and will be corrected on appeal.

In *Steeple* v. *Downing,* 60 Ind. 478, cited in volume 4, page 1183, note 37, of Corpus Juris, it was held:

"Where, in an action by several plaintiffs, to recover real estate, the evidence and findings are, that the title and right to recover are in part only of the plaintiffs, judgment should be rendered accordingly; but, if judgment be then rendered for all, the Supreme Court, on appeal by the defendant, will reverse the judgment only as to those not entitled to recover, and affirm it as to those who are."

And in *Stotler* v. *Chicago, etc., R. Co.,* 200 Mo. 107, also cited in Corpus Juris, volume 4, page 1184, note 42, it was said:

"We consider it established on reason and authority that we may reverse as to one tortfeasor and affirm the judgment as to others. (R. S. 1899, sec. 866). The earlier doctrine was to look on a judgment as an entirety and to be reversed as to all, if reversed as to one. But the later and better rule is to go deeper than the mere shell of the judgment and look into the nature of the case itself, and where the interests of parties to an appeal may be rightfully severed, where the errors do not affect the parties jointly and where the rights of one party are not dependent upon those of another, then, it is not necessary to reverse the entire judgment. (Elliott on Appellate Procedure, secs. 574, 575.)

"The case at bar comes within the foregoing rule and the doctrine of this court is well established that in such case the judgment may be reversed as to one party and affirmed as to other parties."

█ The fact that the prayer of the complaint was that

"a judgment be rendered adjudging that the defendant . . . pay to the plaintiff the sum of $40,000," when the complaint as a whole shows that the plaintiffs were the widow and the children as heirs of José Hernández, can not serve as a basis for holding that the judgment appealed from was in favor of persons who were not parties to the suit. The citations made by the appellant in his brief are correct, but they are not applicable to the facts of this case.

The fifth assignment of error will be discussed in examining the appeal taken by the plaintiffs.

The trial court found from the evidence as follows:

"The evidence introduced by the plaintiff in harmony with the main part of the evidence presented by the defendant and with the inspection made of the place where the accident occurred by the judge signing this opinion, accompanied by counsel for both parties and by the driver of the automobile, shows that José Hernández was on the right side of the road as required by law and the automobile driven by Izquierdo came up behind Hernández and on his right of way at an excessive rate of speed to within a distance of six meters from Hernández and without sounding the klaxon at the proper time, in spite of the fact that he had seen Hernández traveling on the right-hand side of the road from the time the automobile reached the straight part of the road where the accident occurred . . . it should likewise be observed that to the left of the automobile there was enough room for it to pass without striking Hernández, who upon being struck by the automobile fell horizontally toward the right-hand road drain."

The court makes several remarks and continues as follows:

"When any person appears on a road in front of a chauffeur the latter's duty is to control his car in such a way as the circumstances require, and he has no right to rely on his ability to pass. It is therefore well proved that the proximate cause of the accident in the case at bar was the negligence of the chauffeur.

"When the defendant's automobile had reached the top of the hill and taken the straight road where the accident occurred it was running at an excessive rate of speed, as testified to by several witnesses, and it was running in the same direction on the same right-hand side where José Hernández was traveling, who was seen by

the driver of the automobile when he took the straight road and continued behind Hernández without sounding the klaxon and without driving the car to the left-hand side of the road which offered him a wide space sufficient to drive to that side and pass without any danger of striking Hernández and without any obstacle ahead of him to hinder or prevent the passing of the automobile, since the only thing that was ahead of him was Hernández who was walking on the right and who therefore, considering its width, was occupying a small space of the road. The fact that he failed to stop the automobile which was running behind Hernández when at a distance of 25 meters from him, but on the contrary continued his fast driving until he was near Hernández; that the latter was struck by the automobile with its right-hand fender and fell with a part of his body in the ditch and a part on the side of the road, the automobile continuing its speedy run toward the left side of the road for a distance of fifteen meters where it overturned, breaking the left fender and the top; that a lady who was in the automobile received a mortal wound as a result of which she died a few days later and her husband was thrown into the ditch, all of these unfortunate facts showing the excessive rate of speed at which the automobile was running when it overtook and struck José Hernández and when it was suddenly driven to the left side of the road; likewise the fact that when Hernández was struck the car was on the right-hand side of the road on which Hernández was walking. The deviation of the automobile was undoubtedly when Hernández was struck by the fender.''

We have examined carefully all of the evidence introduced and find that it sustains the conclusions of the trial court.

Let us examine the appeal taken by the plaintiffs. They sued for forty thousand dollars. The court allowed them three thousand dollars. The evidence showed that when Hernández died he was 40 years of age and that his wife and his four children depended upon his earnings for support. Hernández's mother left at her death a small farm where minor crops were raised. The property belonged to several heirs, but Hernández used and cultivated it. Besides, Hernández used to go out to do agricultural labor and earned from seventy-five cents to one dollar a day. The defendant presented a witness who testified that Hernández was a

beggar who shared in the alms given by the municipality, but the court did not believe him.

Under those circumstances we think that the sum fixed by the court is an adequate compensation. In the case of *Cruz et al.* v. *Frau,* 31 P.R.R. 87, cited by the appellants, the compensation was fixed at five thousand dollars, but it was shown therein that the father earned two dollars a day; and in *González* v. *Fajardo Development Co.,* 30 P.R.R. 169, also cited by the appellants, although the compensation was fixed at four thousand dollars, the judgment was without special imposition of costs.

For the foregoing reasons the judgment appealed from must be modified by excluding therefrom the name of Dominga Hernández and, as modified, affirmed.